**Marguerite DeSelms**
**PO Box 84343**
**Los Angeles, CA 90073**
**310-427-1008 cell**
**margdeselms@gmail.com**
**Plaintiff In Pro Per**



FILED

CLERK, U.S. DISTRICT COURT

APR - 5 2018

CENTRAL DISTRICT OF CALIFORNIA
BY                    DEPUTY

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

**MARGUERITE DESELMS,**

        Plaintiff,

-vs.-

**BANK OF AMERICA, N.A.,**
**MTC FINANICAL INC. DBA**
**TRUSTEE CORPS**
        Defendants

CASE NO.

ED CV18-703- ODW (MRW)

**EXHIBITS IN SUPPORT OF**
**COMPLAINT AND MOTION FOR**
**TEMPORARY RESTRAINING**
**ORDER, PRELIMINARY**
**AND PERMANENT**
**INJUNCTION**

---

EXHIBIT 1- GRANT DEED DOC # 2006-0552509, 3489 CIRCLE ROAD, SAN BERNARDINO, CA 92405, RECORDED IN THE OFFICIAL RECORDS OF THE COUNTY OF SAN BERNARDINO, 8/14/2006

EXHIBIT 2 - DEED OF TRUST RECORDED ON 8/14/2006 IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, DOCUMENT # 2006-0552510, LENDER IS BONDCORP REALTY INC., A CALIFORNIA CORPORATION AND BORROWER IS MARGUERITE DESELMS

EXHIBIT 3 – NOTE DATED JULY 31ST, 2006

EXHIBIT 4 – NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS EFFECTIVE OCTOBER 1, 2006 TO COUNTRYWIDE HOME LOANS INC. SERVICER IS BONDCORP REALTY SERVICES INC.

EXHIBIT 5 – SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS (INDIVIDUAL) DOCUMENT NUMBER 2010-0476658

39

EXHIBIT 6 - – SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE, DOCUMENT # 2010-0475565, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, ON November 17th, 2010.

EXHIBIT 7 – GRANT DEED RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY ON 11/17/2010, DOCUMENT NUMBER 2010-0476657,

EXHIBIT 8 – BANK OF AMERICA NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

EXHIBIT 9 – ASSIGNMENT OF DEED OF TRUST, RECORDED ON OCTOBER 7TH, 2011 IN THE OFFICIAL RECORDS OF COUNTY OF SAN BERNARDINO, MERS TO BONY ASSIGNMENT

EXHIBIT 10 BOA NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS – NOVEMBER 23RD, 2011

EXHIBIT 11, SUBSTITUTION OF TRUSTEE – RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO, DOCUMENT # 2014-025564 – JULY 15TH, 2014.

EXHIBIT 12 NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO, COUNTY, DOCUMENT NUMBER 2014-0255625, RECORDED ON JULY 15TH, 2014.

EXHIBIT 13 – NOTICE OF RESCISSION OF DECLARATION OF DEFAULT AND DEMAND FOR SALE AND NOTICE OF BREACH AND ELECTION TO SELL UNDER DEED OF TRUST, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, DOCUMENT 2015-0042564 ON FEBRUARY 3RD, 2015.

EXHIBIT 14 – NOTICE OF DEFAULT RECORDED ON NOVEMBER 22ND, 2017 IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, DOCUMENT 2017-0500430

EXHIBIT 15, GRANT DEED RECORDED ON JUNE 1, 2017, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, 2017-0226015

EXHIBIT 16, NOTICE OF TRUSTEE'S SALE - RECORDED ON MARCH 9TH, 2018, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, 2018-0085594

EXHIBIT 17 – 8.5 BILLION DOLLAR SETTLEMENT AGREEMENT

EXHIBIT 18 – *ROMAN PINO v. THE BANK OF NEW YORK MELLON, FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OC8, MORTGAGE PASS THROUGH CERTIFICATES 2006-OC8,* SC11-697.

Branch :IRV,User :ADO2                    Comment:                              Station Id :CNV6

Recording Requested By,
Chicago Title

RECORDING REQUESTED BY:                                    Recorded in Official Records, County of San Bernardino
Chicago Title Company

AND WHEN RECORDED MAIL TO:                                 **LARRY WALKER**
                                                           Auditor/Controller – Recorder
Ms. Marguerite DeSelms                                     887  Chicago Title Co. – Miss
3489 Circle Road
San Bernardino, CA  92405          Doc#:  2006 - 0552509   Titles:  1   Pages:  2

THIS SPACE FOR RECORDER'S USE ONLY

Title Order No.:

**GRANT DEED**

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX is $457.50
[X] computed on full value of property conveyed, or
[ ] computed on full value less value of liens or encumbrances remaining at time of sale.
[ ] Unincorporated area  [X] City of San Bernardino AND

FOR A VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,

Michael L. Grove and Virginia A. Grove, Husband and Wife, as Joint Tenants,

hereby GRANT(s) to:

Marguerite DeSelms, an Unmarried Woman,

the real property in the City of San Bernardino, County of San Bernardino, State of California, described as:
All that portion of Lot 7 of Tract 2508, as per Plat recorded in Book 35 of Maps, Pages 8 and 9,
Records of San Bernardino County, State of California, described as follows:
Beginning at the Southwest corner of said Lot 7; thence North 76° 39' East on the Southerly line of
said Lot a distance of 120 feet; thence North 03° 30' West 164.05 feet; thence South 81° 35' 30"
West, 143.90 feet to a point on the Easterly line of Circle Road; thence Southerly along a curve
concave to the East with a radius of 580 feet, a distance of 90.76 feet; thence along a curve concave
to the West with a radius of 113 feet a distance of 34.73 feet to the point of beginning.
DATED:  June 13, 2006
STATE OF CALIFORNIA
COUNTY OF San Bernardino

On  July 10, 2006
Before me, APRIL STAR JIMAN

A Notary Public in and for said State personally appeared
Michael L. Grove & Virginia A. Grove

_Michael L. Grove_

_Virginia A. Grove_

personally known to me (or proved to me on the basis of
satisfactory evidence) to be the person(s) whose name(s)
is/are subscribed to the within instrument and acknowledged
to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s)
on the instrument the person(s), or the entity upon behalf of
which the person(s) acted, executed the instrument.
WITNESS my hand and official seal.

Signature

MAIL TAX STATEMENTS TO PARTY SHOWN BELOW; IF NO PARTY SHOWN, MAIL AS DIRECTED ABOVE

(This area for official notarial seal)

SAN BERNARDINO,CA                    Page 1 of 2                    Printed on 11/13/2012 11:38:39 AM
Document: DD 2006.552509

*41*

Branch :IRV,User :AD08                Comment:                          Station Id :CNV6

**GOVERNMENT CODE 27361.7**

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON
THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS
FOLLOWS:

NAME OF NOTARY: _April Shaw Samaniego_

DATE COMMISSION EXPIRES: _Aug 21, 2007_

COMMISSION NUMBER: _1435509_

VENDOR NUMBER: _NN4L_

COUNTY WHERE BOND IS FILED: _San Bernardino_

PLACE OF EXECUTION: IRVINE, CA

DATE: _8/7/06_

BY: _____

CHICAGO TITLE COMPANY

42

**EXHIBIT 2**

**DEED OF TRUST RECORDED ON 8/14/2006 IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, DOCUMENT # 2006-0552510, LENDER IS BONDCORP REALTY, A DEFUNCT CALIFORNIA CORPORATION AND BORROWER IS MARGUERITE DESELMS**

43

Branch :IRV,User :AD08                    Comment:                                    Station Id :CNV6

Recording Requested By
Chicago Title

Recording Requested By:
BONDCORP REALTY SERVICES, INC.

And After Recording Return To:
BONDCORP REALTY SERVICES, INC.
1200 QUAIL ST. #170
NEWPORT BEACH, CALIFORNIA 92660
Loan Number: QB129887081



LARRY WALKER
Auditor/Controller – Recorder
807 Chicago Title Co. – Misc.

Deed: 2006-0562510    Titles: 1   Pages: 23

100858530-532    [Space Above This Line For Recording Data]

## DEED OF TRUST

MIN:  1001204-0129887081-0

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JULY 31, 2006              , together with all Riders to this document.
(B) "Borrower" is  MARGUERITE DESKLMS, AN UNMARRIED WOMAN


Borrower is the trustor under this Security Instrument.
(C) "Lender" is  BONDCORP REALTY SERVICES, INC.

Lender is a  CALIFORNIA CORPORATION                                        organized
and existing under the laws of  CALIFORNIA
Lender's address is  1200 QUAIL ST. #170, NEWPORT BEACH, CALIFORNIA
92660

(D) "Trustee" is  CHICAGO TITLE COMPANY
16969 VON KARMAN, IRVINE, CALIFORNIA 92606

(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.
(F) "Note" means the promissory note signed by Borrower and dated   JULY 31, 2006
The Note states that Borrower owes Lender  THREE HUNDRED FORTY THOUSAND AND
00/100                                 Dollars (U.S. $ 340,000.00       ) plus interest.

Borrower Initials:

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eForms 800-649-1362
Form 3005 01/01                                    Page 1 of 14                            www.docmagic.com

44

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
**SEPTEMBER 1, 2036**
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | | |
|---|---|---|---|
| [X] Adjustable Rate Rider | | [ ] Planned Unit Development Rider | |
| [ ] Balloon Rider | | [ ] Biweekly Payment Rider | |
| [ ] 1-4 Family Rider | | [ ] Second Home Rider | |
| [ ] Condominium Rider | | [X] Other(s) [specify] | |
| | | | INTEREST ONLY RIDER, PREPAYMENT RIDER |

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS.  This Security Instrument secures to Lender:  (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

Borrower Initials: 

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac  UNIFORM INSTRUMENT - MERS                     DocMagic eForms 800-649-1362
Form 3005 01/01                                              Page 2 of 14                                       www.docmagic.com

45

Branch : IRV, User :AD08                    Comment:                              Station Id :CNV6

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

COUNTY                    of            SAN BERNARDINO            :
(Type of Recording Jurisdiction)            (Name of Recording Jurisdiction)

SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N. : 0151-161-14-0-000

which currently has the address of    3489 CIRCLE ROAD
                                                      [Street]

SAN BERNARDINO                    , California    92405    ("Property Address"):
[City]                                              [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:
1.   Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Borrower Initials:

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                        Page 3 of 14

46

Branch :IRV,User :AD08                    Comment:                                        Station Id :CNV6

obligated to apply such payments at the time such payments are accepted.  If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds.  Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current.  If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower.  If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure.  No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2.  **Application of Payments or Proceeds.**  Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority:  (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3.  Such payments shall be applied to each Periodic Payment in the order in which it became due.  Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge.  If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full.  To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due.  Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3.  **Funds for Escrow Items.**  Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for:  (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10.  These items are called "Escrow Items."  At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item.  Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section.  Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items.  Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time.  Any such waiver may only be in writing.  In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require.  Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9.  If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount.  Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA.  Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank.  Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA.  Lender

Borrower Initials: _____  _____  _____  _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                    DocMagic eForms 800-649-1362
Form 3005 01/01                                                                                  Page 4 of 14                                        www.docmagic.com

47

Branch :IRV,User :AD08                    Comment:                    Station Id :CNV6

shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. Charges; Liens. Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. Property Insurance. Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

Borrower Initials: 

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          DocMagic eForms 800-649-1362
Form 3005 01/01                                   Page 5 of 14                          www.docmagic.com

48

Branch :IRV,User :AD08                    Comment:                              Station Id :CNV6

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   Occupancy.   Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   Preservation, Maintenance and Protection of the Property; Inspections.   Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

Borrower Initials:

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS                 DocMagic eForms  800-649-1362
Form 3005 01/01                                          Page 6 of 14                                        www.docmagic.com

49

Branch :IRV,User :AD08                    Comment:                                Station Id :CNV6

**8. Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

**9. Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10. Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These

Borrower Initials: 

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                Page 7 of 14                        DocMagic 800-649-1362
                                                                                   www.docmagic.com

50

Branch :IRV,User :AD08      Comment:      Station Id :CNV6

agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower Initials:

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS      DocMagic eForms 800-649-1362
Form 3005 01/01      Page 9 of 14      www.docmagic.com

51

Branch :IRV,User :AD08                    Comment:                                          Station Id :CNV6

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

13. Joint and Several Liability; Co-signers; Successors and Assigns Bound. Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

14. Loan Charges. Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

15. Notices. All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender

Borrower Initials: _____ _____ _____ _____ _____

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   MERS          DocMagic eForms 800-649-1362
Form 3005 01/01                                    Page 9 of 14                                    www.docmagic.com

52

Branch : IRV, User : AD08                    Comment:                                    Station Id :CNV6

specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

16. Governing Law; Severability; Rules of Construction. This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

17. Borrower's Copy. Borrower shall be given one copy of the Note and of this Security Instrument.

18. Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

19. Borrower's Right to Reinstate After Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

20. Sale of Note; Change of Loan Servicer; Notice of Grievance. The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note

Borrower Initials:   

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT   MERS                    DocMagic eForms  800-649-1362
Form 3005 01/01                                    Page 10 of 14                                    www.docmagic.com

53

Branch :IRV,User :AD06                    Comment:                         Station Id :CNV6

and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. Hazardous Substances. As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law, and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

22. Acceleration; Remedies. Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The

Borrower Initials: 

CALIFORNIA - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 11 of 14

54

Branch :IRV,User :AD08                    Comment:                                    Station Id :CNV6

notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

23. Reconveyance. Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

24. Substitute Trustee. Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

25. Statement of Obligation Fee. Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

Borrower Initials: 

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                  Page 12 of 14

55

Branch :IRV,User :AD08                    Comment:                         Station Id :CNV6

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_____ (Seal)        _____ (Seal)
MARGUERITE DESELMS              -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                      -Borrower

_____ (Seal)        _____ (Seal)
                               -Borrower                                      -Borrower

Witness:                                       Witness:

_____               _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                    Page 13 of 14

SAN BERNARDINO,CA                  Page 13 of 23                Printed on 11/13/2012 11:38:45 AM
Document: TD 2006.552510

*5l*

Branch :IRV,User :AD08                    Comment:                              Station Id :CNV6

State of California            }
                               } ss.
County of  SAN BERNARDINO      }

On AUGUST  2, 2006        before me,  MARCY B. SILBERBERG, NOTARY PUBLIC

personally appeared  MARGUERITE DESELMS

~~personally known to me~~ (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



NOTARY SIGNATURE

MARCY B. SILBERBERG
(Typed Name of Notary)

NOTARY SEAL

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                          Page 14 of 14

57

Branch :IRV,User :AD08                     Comment:                                    Station Id :CNV6

**GOVERNMENT CODE 27361.7**

I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:

NAME OF NOTARY: _Nancy B. Silberberg_

DATE COMMISSION EXPIRES: _Feb 24, 2009_

COMMISSION NUMBER: _1547100_

VENDOR NUMBER: _NN47_

COUNTY WHERE BOND IS FILED: _San Bernardino_

PLACE OF EXECUTION: IRVINE, CA

DATE: _8/7/06_

BY: _____
               CHICAGO TITLE COMPANY

58

Branch :IRV.User :AD08                    Comment:                         Station Id :CNV6

# EXHIBIT A

ALL THAT PORTION OF LOT 7, TRACT NO. 2508, AS PER PLAT RECORDED IN BOOK 36, OF
MAPS, PAGES 8 AND 9, RECORDS OF SAN BERNARDINO COUNTY, STATE OF CALIFORNIA,
DESCRIBED AS FOLLOWS:

BEGINNING AT THE SOUTHWEST CORNER OF SAID LOT 7; THENCE NORTH 76° 39' EAST ON
THE SOUTHERLY LINE OF SAID LOT A DISTANCE OF 120 FEET, THENCE NORTH 02° 30'
WEST 164.05 FEET, THENCE SOUTH 61° 35' 30" WEST, 143.90 FEET TO A POINT ON THE
EASTERLY LINE OF CIRCLE ROAD; THENCE SOUTHERLY ALONG A CURVE CONCAVE TO THE
EAST WITH A RADIUS OF 580 FEET, A DISTANCE OF 90.76 FEET; THENCE ALONG A CURVE
CONCAVE TO THE WEST WITH A RADIUS OF 113 FEET A DISTANCE OF 34.73 FEET TO THE
POINT OF BEGINNING.

59

Branch :1RV,User :AD08                    Comment:                         Station Id :CNV6

# PREPAYMENT RIDER

Loan Number:  QB129887081

Date:  JULY 31, 2006

Borrower(s):  MARGUERITE DESELMS

THIS PREPAYMENT RIDER (the "Rider") is made this 31st   day of  JULY    ,
2006              , and is incorporated into and shall be deemed to amend and supplement the
Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the
undersigned ("Borrower") to secure repayment of Borrower's promissory note (the "Note") in favor of
BONDCORP REALTY SERVICES, INC., A CALIFORNIA CORPORATION

("Lender").  The Security Instrument encumbers the Property more specifically described in the Security
Instrument and located at

3489 CIRCLE ROAD, SAN BERNARDINO, CALIFORNIA 92405
[Property Address]

ADDITIONAL COVENANTS.  In addition to the covenants and agreements made in the Security
Instrument, Borrower and Lender further covenant and agree as follows:

**A.     PREPAYMENT CHARGE**
The Note provides for the payment of a prepayment charge as follows:

5   .  **BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**
I have the right to make payments of Principal at any time before they are due.
A payment of Principal only is known as a "Prepayment."  When I make a Prepayment,
I will tell the Note Holder in writing that I am doing so.  I may not designate a payment
as a Prepayment if I have not made all the monthly payments due under the Note.
The Note Holder will use my Prepayments to reduce the amount of Principal that
I owe under the Note.  However, the Note Holder may apply my Prepayment to the
accrued and unpaid interest on the Prepayment amount, before applying my Prepayment
to reduce the Principal amount of the Note.  If I make a partial Prepayment, there will be
no changes in the due dates of my monthly payment unless the Note Holder agrees in
writing to those changes.
If the Note contains provisions for a variable interest rate, my partial Prepayment
may reduce the amount of my monthly payments after the first Change Date following my
partial Prepayment.  However, any reduction due to my partial Prepayment may be offset
by an interest rate increase.
If within SIXTY          ( 60    ) months from the date the Security
Instrument is executed I make a full Prepayment or one or more partial Prepayments, and
the total of all such Prepayments in any 12-month period exceeds  TWENTY
percent (  20.000    %) of the original principal amount of the loan, I will pay a

CALIFORNIA PREPAYMENT RIDER - SPP                          DocMagic @Forms 800-649-1362
(CIVIL CODE PROVISION)                                            www.docmagic.com
12/13/06                         Page 1 of 2

SAN BERNARDINO,CA                    Page 17 of 23              Printed on 11/13/2012 11:38:46 AM
Document: TD 2006.552510



Branch :IRV,User :AD08                    Comment:                                              Station Id :CNV6

Prepayment charge in an amount equal to **SIX** ( **6** ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds **TWENTY** percent ( **20.000 %**) of the original principal amount of the loan.

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property within the first **60** months of the term of the Note. The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests. I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and provisions contained in this Rider.

_____ (Seal)          _____ (Seal)
MARGUERITE DESELMS            -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower


_____ (Seal)          _____ (Seal)
                             -Borrower                                      -Borrower


CALIFORNIA PREPAYMENT RIDER - SPP
(CIVIL CODE PROVISION)
12/13/06                                    Page 2 of 2

61

Branch :IRV,User :AD08                    Comment:                                    Station Id :CNV6

MIN: 1001204-0129887081-0        Loan Number: CB129887081

## ADJUSTABLE RATE RIDER
### (LIBOR Six-Month Index (As Published In *The Wall Street Journal*) - Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 31st day of JULY, 2006 and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust, or Security Deed (the "Security Deed") of the same date given by the undersigned ("Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to BONDCORP REALTY SERVICES, INC., A CALIFORNIA CORPORATION

("Lender") of the same date and covering the property described in the Security Instrument and located at:

3489 CIRCLE ROAD, SAN BERNARDINO, CALIFORNIA 92405
[Property Address]

**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE BORROWER MUST PAY.**

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of        7.125 %.  The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
(A)   Change Dates
The interest rate I will pay may change on the 1st    day of SEPTEMBER, 2011 and on that day every 6th   month thereafter.  Each date on which my interest rate could change is called a "Change Date."

(B)   The Index
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in *The Wall Street Journal*.  The most recent Index figure available as of the first business day of the month immediately preceding the month in which the Change Date occurs is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new Index that is based upon comparable information.  The Note Holder will give me notice of this choice.

Borrower Initials:

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)                    DocMagic eForms  800-649-1362
Single Family–Fannie Mae MODIFIED INSTRUMENT                   www.docmagic.com
Form 3138 1/01                                Page 1 of 2

Branch :IRV,User :AD08                    Comment:                              Station Id :CNV6

**(C)   Calculation of Changes**

Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000                    percentage points (    2.250   %) to the Current Index.   The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the Maturity Date at my new interest rate in substantially equal payments.  The result of this calculation will be the new amount of my monthly payment.

**(D)   Limits on Interest Rate Changes**

The interest rate I am required to pay at the first Change Date will not be greater than     13.125   % or less than     2.250   %.  Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than TWO AND 000/1000                    percentage points (    2.000   %) from the rate of interest I have been paying for the preceding     6     months.  My interest rate will never be greater than 13.125   %.

**(E)   Effective Date of Changes**

My new interest rate will become effective on each Change Date.  I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F)   Notice of Changes**

The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change.  The notice will include information required by law to be given to me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

**B.   TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER**

Uniform Covenant 18 of the Security Instrument is amended to read as follows:

Transfer of the Property or a Beneficial Interest in Borrower.  As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument.  However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.  Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan

Borrower Initials: _____  _____  _____  _____

MULTISTATE ADJUSTABLE RATE RIDER–LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)
Single Family–Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                                   Page 2 of 3

63

Branch :IRV,User :AD08                    Comment:                                       Station Id :CNV6

assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_Marguerite D. Desselms_ (Seal)            _____ (Seal)
MARGUERITE DESSELMS        -Borrower                                   -Borrower

_____ (Seal)            _____ (Seal)
                          -Borrower                                   -Borrower

_____ (Seal)            _____ (Seal)
                          -Borrower                                   -Borrower

MULTISTATE ADJUSTABLE RATE RIDER—LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)
Single Family—Fannie Mae MODIFIED INSTRUMENT
Form 3138 1/01                              Page 3 of 3

64

Branch :IRV,User :AD08                    Comment:                                        Station Id :CNV6

### INTEREST-ONLY ADDENDUM
### TO ADJUSTABLE RATE RIDER

DOC ID #: QB129887081

THIS ADDENDUM is made this      31st    day of JULY, 2006      and is incorporated into and intended to form a part of the Adjustable Rate Rider (the "Rider") dated the same date as this Addendum executed by the undersigned and payable to BONDCORP REALTY SERVICES, INC., A CALIFORNIA CORPORATION (Lender).

THIS ADDENDUM supersedes Section 4(C) of the Rider. None of the other provisions of the Note are changed by this Addendum.

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**

(C)  Calculation of Changes
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000      percentage point(s) ( 2.250  %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D), this rounded amount will be my new interest rate until the next Change Date.

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until the earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

Interest Only Addendum to ARM Rider
2/6, 3/6, 5/6 and 7/6 Hybrid ARM
FE-3601 (0602)                                        Page 1 of 2



Branch :IRV,User :AD08                 Comment:                              Station Id :CNV6

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum to Adjustable Rate Rider.

_Margarita R. Silva_ _____  -Borrower
MARGARITA IRIS DESALINS

_____  -Borrower

_____  -Borrower

_____  -Borrower

Interest Only Addendum to ARM Rider
2/6, 3/6, 5/6 and 7/6 Hybrid ARM
FE-3501 (0602)                    Page 2 of 2

66

**EXHIBIT 3 – NOTE DATED JULY 31ST, 2006**

67

MIN: 1001204-0129887081-0      Loan Number: QB129887081

# ADJUSTABLE RATE NOTE

### (LIBOR Six-Month Index (As Published in *The Wall Street Journal*)-Rate Caps)

**THIS NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE AND MY MONTHLY PAYMENT. THIS NOTE LIMITS THE AMOUNT MY INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE I MUST PAY.**

JULY 31, 2006      NEWPORT BEACH      CALIFORNIA
[Date]            [City]           [State]

     3489 CIRCLE ROAD, SAN BERNARDINO, CALIFORNIA 92405
                 [Property Address]

## 1. BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $340,000.00     (this amount is called "Principal"), plus interest, to the order of Lender. Lender is BONDCORP REALTY SERVICES, INC., A CALIFORNIA CORPORATION

I will make all payments under this Note in the form of cash, check or money order.

I understand that Lender may transfer this Note. Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2. INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   7.125  %. The interest rate I will pay may change in accordance with Section 4 of this Note.

The interest rate required by this Section 2 and Section 4 of this Note is the rate I will pay both before and after any default described in Section 7(B) of this Note.

## 3. PAYMENTS

**(A) Time and Place of Payments**

I will pay principal and interest by making a payment every month.

I will make my monthly payments on the   1st   day of each month beginning on   OCTOBER 1 2006  . I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on   SEPTEMBER 1, 2036  , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at 1200 QUAIL ST. #170, NEWPORT BEACH, CALIFORNIA 92660

           or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**

Each of my initial monthly payments will be in the amount of U.S. $ 2,290.64     This amount may change.      ** See attached Interest Only Note Addendum

**(C) Monthly Payment Changes**

Changes in my monthly payment will reflect changes in the unpaid principal of my loan and in the interest rate that I must pay. The Note Holder will determine my new interest rate and the changed amount of my monthly payment in accordance with Section 4 of this Note.

Borrower Initials: _____

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL

MULTISTATE ADJUSTABLE RATE NOTE-LIBOR SIX MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)-Single Family
Fannie Mae MODIFIED INSTRUMENT     BY: _____
Page 1 of 6

Form 3520 1/01
DocMagic eForms 800-649-1362
www.docmagic.com

JM ESCROW INC.

68

6. **LOAN CHARGES**

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me that exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

7. **BORROWER'S FAILURE TO PAY AS REQUIRED**

(A) Late Charges for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of      15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

(B) Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

(C) Notice of Default

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal that has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

(D) No Waiver By Note Holder

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

(E) Payment of Note Holder's Costs and Expenses

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

8. **GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Unless the Note Holder requires a different method, any notice that must be given to the Note Holder under this Note will be given by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

9. **OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

10. **WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

Borrower Initials:

I HEREBY CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL.

MULTISTATE ADJUSTABLE RATE NOTE - LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN THE WALL STREET JOURNAL)-Single Family
Fannie Mae MODIFIED INSTRUMENT   BY                                 Page 3 of 5

JM ESCROW INC.

Form 3520 1/01
DocMagic eForms 800-649-1362
www.docmagic.com

## 11. UNIFORM SECURED NOTE

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses that might result if I do not keep the promises that I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions read as follows:

Transfer of the Property or a Beneficial Interest in Borrower. As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.    Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender also may require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing.

If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

Borrower Initials: _____

I HEREBY CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL

BY: _____

JM ESCROW INC.

MULTISTATE ADJUSTABLE RATE NOTE--LIBOR SIX-MONTH INDEX
(AS PUBLISHED IN *THE WALL STREET JOURNAL*)--Single Family
Fannie Mae MODIFIED INSTRUMENT

Form 3520 1/01
DocMagic <i>CForms</i> 800-649-1362
www.docmagic.com

70

**WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.**

_____ (Seal)     _____ (Seal)
MARGUERITE DESELMS    -Borrower                               -Borrower

_____ (Seal)     _____ (Seal)
                            -Borrower                               -Borrower

_____ (Seal)     _____ (Seal)
                            -Borrower                               -Borrower

**PAY TO THE ORDER OF:**
  **WITHOUT RECOURSE**

BONDCORP REALTY SERVICES, INC., A CALIFORNIA CORPORATION

BY: _____
    **BRYAN K. BOND**

ITS: PRESIDENT

_[Sign Original Only]_

I HEREBY CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL
BY: _____
Page 5 of 5
JM ESCROW INC.

MULTISTATE ADJUSTABLE RATE NOTE–LIBOR SIX-MONTH-INDEX
(AS PUBLISHED IN _THE WALL STREET JOURNAL_)—Single Family
Fannie Mae MODIFIED INSTRUMENT

Form 3520 1/01
DocMagic eForms 800-649-1362
www.docmagic.com

Loan Number: QB129887081
Property Address: 3489 CIRCLE ROAD, SAN BERNARDINO, CALIFORNIA 92405

## INTEREST-ONLY ADDENDUM
## TO ADJUSTABLE RATE NOTE

**THIS ADDENDUM** is made this **31st** day of **JULY, 2006** and is incorporated into and intended to form a part of the Adjustable Rate Note (the "Note") dated the same date as this Addendum executed by the undersigned and payable to BONDCORP REALTY SERVICES, INC., A CALIFORNIA CORPORATION (the Lender).

**THIS ADDENDUM** supersedes Section 3(A), 3(B), 4(C) and 7(A) of the Note. None of the other provisions of the Note are changed by this Addendum.

**3. PAYMENTS**

**(A) Time and Place of Payments**
I will pay interest by making payments every month for the first 120 payments (the "Interest-Only Period") in the amount sufficient to pay interest as it accrues. I will pay principal and interest by making payments every month thereafter for the next 240 payments in an amount sufficient to fully amortize the outstanding principal balance of the Note at the end of the Interest-Only Period over the remaining term of the Note in equal monthly payments.

I will make my monthly payments on the first day of each month beginning on OCTOBER 1, 2006 . I will make these payments every month until I have paid all principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled date and will be applied to interest before principal. If, on SEPTEMBER 1, 2036 I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my payments at 1200 QUAIL ST. #170, NEWPORT BEACH, CALIFORNIA 92660
or at a different place if required by the Note Holder.

**(B) Amount of My Initial Monthly Payments**
Each of my initial monthly payments will be in the amount of U.S. $ 2,018.75 . This payment amount is based on the original balance of the Note. This payment amount may change.

**4. INTEREST RATE AND MONTHLY PAYMENT CHANGES**

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding TWO AND 250/1000 percentage point(s) ( 2.250 %) to the Current Index for such Change Date. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in section 4(D), this rounded amount will be my new interest rate until the next Change Date.

Interest Only Addendum to Note
(2/6, 3/6, 5/6 and 1/6 6mo Hybrid ARM)
FE-3502 (0802)

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL.

BY: _____

JM ESCROW, INC

Page 1 of 7

72

During the Interest-Only Period, the Note Holder will then determine the amount of the monthly payment that would be sufficient to repay accrued interest. This will be the amount of my monthly payment until earlier of the next Change Date or the end of the Interest-Only Period unless I make a voluntary prepayment of principal during such period. If I make a voluntary prepayment of principal during the Interest-Only Period, my payment amount for subsequent payments will be reduced to the amount necessary to pay interest at the then current interest rate on the lower principal balance. At the end of the Interest-Only Period and on each Change Date thereafter, the Note Holder will determine the amount of the monthly payment that would be sufficient to repay in full the unpaid principal that I am expected to owe at the end of the Interest-Only Period or Change Date, as applicable, in equal monthly payments over the remaining term of the Note. The result of this calculation will be the new amount of my monthly payment. After the end of the Interest-Only Period, my payment amount will not be reduced due to voluntary prepayments.

7.   **BORROWER'S FAILURE TO PAY AS REQUIRED**

   (A) Late Charge for Overdue Payments
   If the Note Holder has not received the full amount of any monthly payment by the end of 15 calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be 5.000 % of my overdue payment of interest during the Interest-Only Period, 120 of my overdue payment of principal and interest thereafter. I will pay this late charge promptly but only once on each late payment.

   BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Addendum to Adjustable Rate Note.

_Marguerite D. Selms_                    8-02-06
Borrower MARGUERITE DESELMS                Date

_____          _____
Borrower                                   Date

_____          _____
Borrower                                   Date

_____          _____
Borrower                                   Date

Interest Only Addendum to Note
(2/6, 3/6, 5/6 and 7/6 6mo Hybrid ARM)
FE-3502 (0602)

I HEREBY CERTIFY THAT THIS IS A TRUE
AND CORRECT COPY OF THE ORIGINAL

BY _____

JM ESCROW INC

73

# PREPAYMENT ADDENDUM TO NOTE

Loan Number: QB129887081

Date: JULY 31, 2006

Borrower(s): MARGUERITE DESELMS

THIS PREPAYMENT ADDENDUM TO NOTE (the "Addendum") is made this 31st day of JULY, 2006, and is incorporated into and shall be deemed to amend and supplement that certain promissory note (the "Note") made by the undersigned ("Borrower") in favor of BONDCORP REALTY SERVICES, INC., A CALIFORNIA CORPORATION

("Lender") and dated the same date as this Addendum. Repayment of the Note is secured by a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument") given by Borrower in favor of Lender and dated the same date as this Addendum. To the extent that the provisions of this Addendum are inconsistent with the provisions of the Note, the provisions of this Addendum shall supersede the inconsistent provisions of the Note.

ADDITIONAL COVENANTS. In addition to the covenants and agreements made in the Note, Borrower and Lender further covenant and agree as follows:

Section 5 of the Note is amended to read in its entirety as follows:

5 . **BORROWER'S RIGHT TO PREPAY; PREPAYMENT CHARGE**

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under the Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due dates of my monthly payment unless the Note Holder agrees in writing to those changes.

If the Note contains provisions for a variable interest rate, my partial Prepayment may reduce the amount of my monthly payments after the first Change Date following my partial Prepayment. However, any reduction due to my partial Prepayment may be offset by an interest rate increase.

If within SIXTY ( 60 ) months from the date the Security Instrument is executed I make a full Prepayment or one or more partial Prepayments, and the total of all such Prepayments in any 12-month period exceeds TWENTY ( 20.000 %) of the original principal amount of the loan, I will pay a Prepayment charge in an amount equal to SIX ( 6 ) months' advance interest on the amount by which the total of my Prepayments within any 12-month period exceeds TWENTY percent ( 20.000 %) of the original principal amount of the loan.

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL

CALIFORNIA PREPAYMENT ADDENDUM TO NOTE - SBP
(CIVIL CODE PROVISION)
12/13/05
BY
Page 1 of 2
JM ESCROW INC.
DocMagic eForms 800-649-1362
www.docmagic.com

74

If the Note contains provisions for a variable interest rate, the purpose of the loan is to finance the purchase or construction of real property containing four or fewer residential units or on which four or fewer residential units are to be constructed, and the Note Holder is not a "supervised financial organization," as defined in California Civil Code Section 1916.5, then I may prepay the loan in whole or in part without a Prepayment charge within 90 days of notification of any increase in the rate of interest.

Notwithstanding the foregoing provisions, I may make a full Prepayment without paying a Prepayment charge in connection with a bona fide and arms-length sale of all or any part of, or any legal or beneficial interest in, the Property within    the first   60       months of the term of the Note.  The phrase "bona fide and arms-length sale" means a sale in which all of the parties involved in the transaction, including without limitation, the buyer, seller, lender, real estate agent or broker, are independent of one another and unrelated by familial or financial interests.  I agree to provide the Note Holder with any and all evidence reasonably requested by the Note Holder to substantiate that the sale of the Property is bona fide and arms-length.

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and provisions contained in this Addendum.

| | | | |
|---|---|---|---|
| _Marguerite DeSelms_ | 8-02-06 | | |
| Borrower MARGUERITE DESELMS | Date | Borrower | Date |
| | | | |
| Borrower | Date | Borrower | Date |
| | | | |
| Borrower | Date | Borrower | Date |

I HEREBY CERTIFY THAT THIS IS A TRUE AND CORRECT COPY OF THE ORIGINAL

BY: _____

JM ESCROW INC

CALIFORNIA PREPAYMENT ADDENDUM TO NOTE - SEE
(CIVIL CODE PROVISION)
12/13/06

DocMagic *eForms* 800-649-1362
www.docmagic.com

## ALLONGE TO NOTE

LOAN NUMBER: QB139687081

LOAN AMOUNT: $340,000.00

PROPERTY ADDRESS: 3489 CIRCLE ROAD, SAN BERNARDINO, CALIFORNIA 92405

ALLONGE TO NOTE DATED JULY 31, 2006

IN FAVOR OF BONDCORP REALTY SERVICES, INC.

AND EXECUTED BY MARGUERITE DESELMS

PAY TO THE ORDER OF COUNTRYWIDE BANK, N.A., 1800 TAPO CANYON RD., SIMI VALLEY, CA 93063

WITHOUT RECOURSE BONDCORP REALTY SERVICES, INC.

BY: BRYAN K. BOND

TITLE: PRESIDENT

Pay to the order of

Countrywide Home Loans, Inc.

Without Recourse
Countrywide Bank, N.A.

By: Laurie Meder, SVP

Pay to the order of

Without Recourse
Countrywide Home Loans, Inc.

By:

ALLONGE TO NOTE
06/08/04

76

**EXHIBIT 4 – NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS EFFECTIVE OCTOBER 1, 2006 TO COUNTRYWIDE HOME LOANS INC. SERVICER IS BONDCORP REALTY SERVICES INC.**

# NOTICE OF ASSIGNMENT, SALE OR TRANSFER
## OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from **BONDCORP REALTY SERVICES, INC.** to Countrywide Home Loans, Inc.,

effective OCTOBER 1, 2006

Your new Countrywide Home Loans loan number is Q8129687081

The assignment, sale or transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan.

Except in limited circumstances, the law requires that your present Servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new Servicer must also send you this notice no later than 15 days after this effective date or at closing.

Your present Servicer is **BONDCORP REALTY SERVICES, INC.**
If you have any questions relating to the transfer of your servicing from your present Servicer, contact
**BONDCORP REALTY SERVICES, INC.**
at (949) 250; 8911        between   8:00     a.m. and 5:00      p.m. on the following days
MONDAY THRU FRIDAY        . This is ☑ toll free or ☐ collect number.

Your new Servicer will be Countrywide Home Loans, Inc.

The business address for your new Servicer is:

Countrywide Home Loans, Inc.
400 Countrywide Way
Simi Valley, CA 93065

The payment address for your first payment with the new Servicer is:

Countrywide Home Loans, Inc.
P.O. Box 10334
Van Nuys, CA 91416-0334

The toll free telephone number of your new Servicer is (800) 969-9997.

If you have any questions relating to the transfer of servicing to Countrywide Home Loans, Inc., call (800) 969-9997 between 6:00 A.M. and 5:00 P.M. Pacific Time, Monday through Friday.

The date that your present Servicer will stop accepting payments from you is OCTOBER 1, 2006
The date that your new Servicer will start accepting payments from you is    OCTOBER 1, 2006
Send all payments due on or after that date to your new Servicer.

-78-

You should also be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act (RESPA) (12 U.S.C. 2605):

During the 60-day period following the effective date of the transfer of the loan servicing, a loan payment received by your old Servicer before its due date may not be treated by the new loan Servicer as late, and a late fee may not be imposed on you.

Section 6 of RESPA (12 U.S.C. 2605) gives you certain consumer rights. If you send a "qualified written request" to your loan Servicer concerning the servicing of your loan, your Servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request. A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the Servicer, which includes your name and account number, and your reasons for the request. If you want to send a "qualified written request" regarding the servicing of your loan, it must be sent to this address:

> Countrywide Home Loans, Inc.
> SV-35 B1
> P.O. Box 5170
> Simi Valley, CA 93062-5170

Not later than 60 business days after receiving your request, your Servicer must make any appropriate corrections to your account, and must provide you with a written clarification regarding any dispute.  During this 60 Business Day period, your Servicer may not provide information to a consumer reporting agency concerning any overdue payment related to such period or qualified foreclosure if proper grounds exist under the mortgage documents.

A Business Day is a day on which the offices of the business entity are open to the public for carrying on substantially all of its business functions.

Section 6 of RESPA also provides for damages and costs for individuals or classes of individuals in circumstances where Servicers are shown to have violated the requirements of that section.  You should seek legal advice if you believe your rights have been violated.


BONDCORP REALTY SERVICES, INC.
PRESENT SERVICER                                    Date


COUNTRYWIDE HOME LOANS, INC
FUTURE SERVICER                                     Date



79

*RMR Group   949 724 9901   Miller or Leslie Steven*

## BONDCORP REALTY SERVICES, INC.
### 1200 QUAIL STREET # 170, NEWPORT BEACH, CALIFORNIA 92660
### PHONE (949)250-8911   FAX (949)250-8911

Date: AUGUST 28, 2006

Mortgagor Name:   MARGUERITE DESELMS

Address:   3489 CIRCLE ROAD, SAN BERNARDINO, CA 92405

RE Loan Number: QB129887081

Dear Mortgagor(s),

Effective AUGUST 28, 2006 the servicing of your mortgage loan has been transferred to COUNTRYWIDE HOME LAONS.

This transfer does not change the terms of your original mortgage contract other than the transfer of the servicing of your loan

As of the effective date, all future payments must be sent to COUNTRYWIDE HOME LOANS.

Please make your check or money order payable to COUNTRYWIDE HOME LOANS and include your loan # 129887081

A monthly Mortgage Loan Statement will be sent to you, but until you receive this statement, mail your payments to:
COUNTRYWIDE HOME LOANS
400 COUNTRYWIDE WAY
SV-36
SIMI VALLEY, CA 93065

Next January you will be furnished with a statement reflecting the amount of mortgage interest and real estate property taxes that you paid during the calendar year that we serviced your account. If you have any questions concerning your account, please contact the Customer Service Department of COUNTRYWIDE HOME LOANS at (800) 669-6607.

It has been a pleasure to service your mortgage loan and we wish you a successful relationship with COUNTRYWIDE HOME LOANS.

Sincerely,

BONDCORP REALTY SERVICES, INC.

*80*

EXHIBIT 5 – SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS (INDIVIDUAL) DOCUMENT NUMBER 2010-0476658

Branch :IRV.User :AD08                    Comment:                                    Station Id :CNV6

RECORDING REQUESTED BY

Marguerite DeSelms

AND WHEN RECORDED MAIL TO

NAME: CAA, Inc.

ADDRESS: 5757 W. Tropicana Ave., #101

CITY: Las Vegas
STATE & ZIP: Nevada 89103

Recorded in Official Records, County of San Bernardino

**LARRY WALKER**
Auditor/Controller – Recorder

P Counter

Doc#: 2010-0476658                    Titles: 2    Pages: 3

11/17/2010
12:05 PM
SB

Fees      30.00
Taxes      0.00
Other      0.00
PAID      30.00

TITLE ORDER NO.                    ESCROW NO.                    APN: 0191-161-14-0-000

## SHORT FORM DEED OF TRUST AND ASSIGNMENT OF RENTS (INDIVIDUAL)

This Deed of Trust, made this    13th    day of    November, 2010    , between   The Circle Road Revocable Living Trust Dated November 11, 2010, herein called Trustor,  whose address is     3488 Circle Road, San Bernardino, CA. 92406
and

CAA, Inc., herein called Trustee, and Alan-David: Trust, Trustee of the KATN Revocable Living Trust, herein called Beneficiary.
Witnesseth: That Trustor IRREVOCABLY GRANTS, TRANSFERS AND ASSIGNS TO TRUSTEE IN TRUST, WITH POWER OF SALE, that property in      San Bernardino      County, California, described as:

See Exhibit "A" attached hereto and made a part hereof

TOGETHER WITH the rents, issues and profits thereof, SUBJECT, HOWEVER, to the right, power and authority given to and conferred upon Beneficiary by paragraph (10) of the provisions incorporated herein by reference to collect and apply such rents, issues and profits.
For the Purpose of Securing: 1. Performance of each agreement of Trustor incorporated by reference or contained herein.  2. Payment of the indebtedness evidenced by one promissory note of even date herewith, and any extension or renewal thereof, in the principal sum of $   186,000.00   executed by Trustor in favor of Beneficiary or order. 3. Payment of such further sums as the then record owner of said property may borrow from Beneficiary, when evidenced by another note (or notes) reciting it so secured.
To Protect the Security of This Deed of Trust, Trustor Agrees: By the execution and delivery of this Deed of Trust and the note secured hereby, that provisions (1) to (14), inclusive, of the fictitious deed of trust recorded October 23, 1961, in the book and at the page of Official Records in the office of the county recorder of the county where said property is located, noted below opposite the name of such county, viz:

| COUNTY | BOOK PAGE | COUNTY | BOOK PAGE | COUNTY | BOOK PAGE | COUNTY | BOOK PAGE | COUNTY | BOOK PAGE |
|--------|-----------|--------|-----------|--------|-----------|--------|-----------|--------|-----------|
| IMPERIAL | 1189 374 | ORANGE | 5194 614 147 | SAN BERNARDINO | 5567 61 | SANTA BARBARA | 1878 860 | SIERRA | 29 335 |
| KERN | 3427 60 | RIVERSIDE | 3005 | SAN LUIS OBISPO | 1151 12 | LOS ANGELES | T2055 899 | SISKIYOU | 468 181 |
| LOS ANGELES | T2055 899 | | | SAN DIEGO | SERIES 5 BOOK 1964 PAGE 149858 | | | | |

(which provisions, identical in all counties, are printed on the reverse hereof) hereby are adopted and incorporated herein and made a part hereof as fully as though set forth herein at length, that he will observe and perform said provisions; and that the references to property, obligations, and parties in said provisions shall be construed to refer to the property, obligations, and parties set forth in this Deed of Trust.
The undersigned Trustor requests that a copy of any Notice of Default and of any Notice of Sale hereunder be mailed to him at his address hereinbefore set forth.

_Marguerite De Selms_

The Circle Road Revocable Living Trust Dated November 11, 2010,
by Marguerite DeSelms, Trustee/Trustor

**\*SEE ATTACHED NOTARY ACKNOWLEDGEMENT**



Branch :IRV,User :AD08                    Comment:                              Station Id :CNV6

EXHIBIT "A"

SITUATED IN THE COUNTY OF SAN BERNARDINO, STATE OF
CALIFORNIA: ALL THAT PORTION OF LOT 7 OF TRACT 2508, AS
PER PLAT RECORDED IN BOOK 36 OF MAPS, PAGES 8 AND 9,
RECORDS OF SAN BERNARDINO COUNTY, STATE OF CALIFORNIA,
DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST
CORNER OF SAID LOT 7; THENCE NORTH 76 DEGREES 39 MINUTES
EAST ON THE SOUTHERLY LINE OF SAID LOT A DISTANCE OF 120
FEET; THENCE NORTH 03 DEGREES 30 MINUTES WEST 164.05
FEET; THENCE SOUTH 61 DEGREES 35 MINUTES 30 SECONDS
WEST, 143.90 FEET TO A POINT ON THE EASTERLY LINE OF
CIRCLE ROAD; THENCE SOUTHERLY ALONG A CURVE CONCAVE
TO THE EAST WITH A RADIUS OF 500 FEET, A DISTANCE OF 90.76
FEET; THENCE ALONG A CURVE CONCAVE TO THE WEST WITH A
RADIUS OF 113 FEET A DISTANCE OF 34.73 FEET TO THE POINT OF
BEGINNING.

APN: 0151-161-14-0-000

83

Branch :IRV,User :AD08                    Comment:                              Station Id :CNV6

## ACKNOWLEDGMENT

State of California
County of _____ San Bernardino _____ )

On __November 17, 2010__ _____ before me, __Anna Carla Celestino, Notary Public__
(insert name and title of the officer)

personally appeared __MARGUERITE DESELMS__
who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in
his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

ANNA CARLA CELESTINO
Commission # 1765890
Notary Public - California
San Bernardino County
My Comm. Expires Dec 5, 2010

Signature _____

84

EXHIBIT 6 - – SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE, DOCUMENT # 2010-0475565, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, ON November 17th, 2010.

Branch :IRV.User :AD08                    Comment:                    Station Id :CNV6

Recording Requested By
**Marguerite DeSelms**
When recorded mail document to:

NAME CAA, Inc.

ADDRESS 6767 W. Tropicana Ave., #101

CITY Las Vegas
STATE & ZIP Nevada, 89103
APN: 0151-161-14-0-000

Recorded in Official Records, County of San Bernardino
**LARRY WALKER**
Auditor/Controller – Recorder
P Counter

Doc#: 2010 – 0476656

11/17/2010
12:35 PM

| | |
|---|---|
| Titles: 2 | Pages: 2 |
| Fees | |
| Taxes | |
| Other | |
| PAID | |

*Above Space for Recorder's Use Only*

## SUBSTITUTION OF TRUSTEE AND FULL RECONVEYANCE

Whereas, __Marguerite DeSelms, An Unmarried Woman_____ was the Original

Trustor __Chicago Title Company_____, the original

Trustee, and __Mortgage Electronic Registration Systems Inc., ("MERS") Acting Solely As Nominee__

__For BondCorp Realty Services, Inc._____

Original beneficiary, under that certain Deed of Trust dated ___July 31, 2006_____

and recorded __August 14, 2006_____ as Instrument No. ___2006-0552510_____

Book _____ Page _____ Official Records of the County of __San Bernardino__

_____ State of California and

WHEREAS, the undersigned present beneficiary desires to substitute a new Trustee under said Deed of
Trust in place and instead of
__Chicago Title Company__

Now therefore, the undersigned hereby substitutes himself/herself/themselves as Trustee under said Deed of Trust and does
hereby reconvey, without warranty, to the person or persons legally entitled hereto, the Estate now held by him thereunder.
Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter and the singular number
includes the plural. The undersigned hereby accepts said appointment as trustee under the above deed of trust, and as
successor trustee, and pursuant to the request of said owner and holder and in accordance with the provisions of said deed of
trust, does hereby RECONVEY WITHOUT WARRANTY, TO THE PERSONS LEGALLY ENTITLED THERETO, all the estate
now held by it under said deed of trust:



Branch :IRV,User :AD08                    Comment:                                    Station Id :CNV6

KATN Trust

_Alan-David:Tikal_
BENEFICIARY / NEW TRUSTEE

Dated: _November 13, 2010_

STATE OF NEVADA
COUNTY OF _____ CLARK _____ }ss.

On _11/13/10_ before me, _JANICE M LAFAZIA_ a Notary Public,
personally appeared _ALAN-DAVID:TIKAL_ who proved to me on the basis of satisfactory
evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity (ies), and that by his/her/their signature(s) on the instrument the
person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of Nevada that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.                                    NOTARY SEAL

Signature: _Janice M LaFazia_

JANICE M. LAFAZIA
Notary Public State of Nevada
No. 05-100313-1
My appt. exp. Jan. 4, 2013



**EXHIBIT 7 – GRANT DEED RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY ON 11/17/2010, DOCUMENT NUMBER 2010-0476657,**

Branch :IRV,User :AD08          Comment:                          Station Id :CNV6

Recorded in Official Records, County of San Bernardino

**LARRY WALKER**
Auditor/Controller – Recorder

P Counter

Doc#: 2010-0476657

Recording Requested By
Marguerite DeSalms
When recorded mail to
NAME LAA, Inc.
ADDRESS 6767 W. Tropicana Ave
Suite 207
CITY Las Vegas
STATE & ZIP Nevada, 89103
APN: 0151-141-14-0-000

Above Space for Recorder's Use Only

## GRANT DEED

*This is a Bonafide Gift
and the Grantor received
nothing in return, & & ?
*1911*

THE UNDERSIGNED GRANTOR(S) DECLARE(S)
DOCUMENTARY TRANSFER TAX IS $ 0.00
CITY TAX $ 0.00

☐ computed on full value of property conveyed, or
☐ computed on full value of liens or encumbrances remaining at time of sale
☐ Unincorporated area in City of San Bernardino                and

FOR A FULL VALUABLE CONSIDERATION, receipt of which is hereby acknowledged,
Marguerite Deselms, An Unmarried Woman

hereby GRANT(s) to The Circle Road Revocable Living Trust Dated November 11, 2010

the following described real property in the City of San Bernardino          County

of San Bernardino          State of California:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF

Dated  11-17-2010

Marguerite DeSalms

STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO          ) SS

On 11/17/2010 before me, ANNA CARLA CELESTINO, a Notary Public, personally
appeared MARGUERITE DESELMS          who proved to me on the
basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within
instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized
capacity (ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct

WITNESS my hand and official seal

Signature _____ NOTARY PUBLIC

ANNA CARLA CELESTINO
Commission # 1700000
Notary Public – California
San Bernardino County
My Comm. Expires Dec 5, 2010

MAIL TAX STATEMENTS TO ADDRESS AS SHOWN ABOVE

SAN BERNARDINO,CA                Page 1 of 2          Printed on 11/13/2012 11:38:55 AM
Document: DD 2010.476657



Branch :IRV,User :AD03                     Comment:                                    Station Id :CNV6

## EXHIBIT "A"

SITUATED IN THE COUNTY OF SAN BERNARDINO, STATE OF
CALIFORNIA: ALL THAT PORTION OF LOT 7 OF TRACT 2508, AS
PER PLAT RECORDED IN BOOK 36 OF MAPS, PAGES 8 AND 9,
RECORDS OF SAN BERNARDINO COUNTY, STATE OF CALIFORNIA,
DESCRIBED AS FOLLOWS: BEGINNING AT THE SOUTHWEST
CORNER OF SAID LOT 7; THENCE NORTH 76 DEGREES 39 MINUTES
EAST ON THE SOUTHERLY LINE OF SAID LOT A DISTANCE OF 120
FEET; THENCE NORTH 03 DEGREES 30 MINUTES WEST 164.05
FEET; THENCE SOUTH 61 DEGREES 30 MINUTES 30 SECONDS
WEST, 143.90 FEET TO A POINT ON THE EASTERLY LINE OF
CIRCLE ROAD; THENCE SOUTHERLY ALONG A CURVE CONCAVE
TO THE EAST WITH A RADIUS OF 500 FEET, A DISTANCE OF 90.76
FEET; THENCE ALONG A CURVE CONCAVE TO THE WEST WITH A
RADIUS OF 113 FEET A DISTANCE OF 34.73 FEET TO THE POINT OF
BEGINNING.

APN: 0151-161-14-0-000



**EXHIBIT 8 – BANK OF AMERICA NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS**

91

**Bank of America**

Home Loans

P O Box 84703
Simi Valley, CA 93094-1033

Doc ID: BANACOM1

1-86416   1N AV 0 15   *AUTO   S2 HH3 937M-82 HH1   <DN-PB81> 1A

MARGUERITE DEGELMAN
304 w 3RD ST
SAN PEDRO       CA 90731-3305

Account No.: 129887081

## IMPORTANT MESSAGE ABOUT YOUR LOAN

We want to let you know that effective July 1, 2011, the servicing of home loans by our subsidiary–BAC Home Loans Servicing, LP will transfer to our parent company–Bank of America, N.A. Based upon our records as of April 24, 2011, your home loan account noted above is affected by this servicing transfer.

## WHAT THIS MEANS FOR YOU

- If you pay by check on or after July 1, 2011, please make checks payable to "Bank of America, N.A."
- Effective July 1, 2011, your monthly statements will show "Bank of America, N.A." as your loan servicer.
- We will notify property insurance carriers of this servicing transfer; however, we recommend you review the next policy renewal notice you receive after July 1, 2011, to verify that the "Mortgagee" for your policy has been updated to reflect "Bank of America, N.A." If your policy has not been updated, please contact your insurance carrier to ensure the update is made.
- Your account number will remain the same.
- The terms and conditions for your loan will not change.
- If you make automated/ACH payments or you make payments through Bank of America's or another financial institution's online banking service, continue to make payments as you do today. No actions are required on your part to accommodate this transfer.
- The customer service toll-free numbers, fax numbers and mailing addresses will remain the same.
- Online Banking access to your account will remain the same.
- Your privacy elections will not change.

**For customers discussing, applying for, or involved in any Loan Modification, Repayment Plan, Short Sale, Deed in Lieu of Foreclosure, or Foreclosure**

This servicing transfer will not impact any current discussions, applications, approved arrangements or proceedings in these areas. However, if you are currently in a repayment plan, trial modification or permanent modification, check payments made on or after July 1, 2011, should be payable to "Bank of America, N.A."

### PLEASE SEE REVERSE SIDE

Bank of America, N.A. Member FDIC . Bank of America, N.A. is an Equal Housing Lender
©2011 Bank of America Corporation. Trademarks are the property of Bank of America Corporation. All rights reserved.

BANACOM1   13045 02/4/2011



3 of 4

## NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS

You are hereby notified that the servicing of your mortgage loan and the right to collect payments in connection with your loan will be/was transferred from BAC Home Loans Servicing, LP to Bank of America, N.A. effective July 1, 2011.

The transfer of the servicing of the mortgage loan does not affect any term or condition of the mortgage instruments, other than terms directly related to the servicing of your loan. Except in limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing. However, in this case, all necessary information is combined in this one notice.

YOUR SERVICER PRIOR TO JULY 1, 2011:
Your servicer prior to July 1, 2011: BAC Home Loans Servicing, LP. If you have any questions relating to the transfer of servicing from this servicer, please call Bank of America Customer Service toll-free at 1.877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday. Your call may be monitored or recorded to ensure quality service.

YOUR SERVICER ON AND AFTER JULY 1, 2011:
Your new servicer on and after July 1, 2011: Bank of America, N.A. The business address for Bank of America, N.A. for purposes of your mortgage loan is: 450 American Street, Simi Valley, CA 93065-6285. Below is the information on how to contact and make payments to Bank of America, N.A.

Toll-free Number
The toll-free telephone number of Bank of America, N.A. is 1.877.488.7812. If you have any questions relating to the transfer of servicing to your new servicer, please call Bank of America Customer Service at 1 877.488.7812 between 8 a.m. and 9 p.m. Eastern, Monday through Friday. Please have your account number ready whenever you call. Your call may be monitored or recorded to ensure quality service.

Address for Correspondence (other than payments)
The address to send written correspondence to Bank of America, N.A. (other than payments) is:

Bank of America, N.A.
Customer Service Correspondence
CA6-919-01-41
P.O. Box 5170
Simi Valley, CA 93062-5170

Please include your loan number on all written correspondence you send to Bank of America, N.A.

Address for Mailed Payments
This transfer does not change the mailing address to send your payments. Please continue to send your payments to Bank of America, N.A. at the mailing address indicated on your monthly statements and/or coupons. Please write your loan number on all checks, cashier checks and other payments sent to Bank of America, N.A.

INFORMATION CONCERNING YOUR PAYMENTS AND OPTIONAL INSURANCE
The date that BAC Home Loans Servicing, LP no longer accepts payments from you is June 30, 2011. The date that Bank of America, N.A. begins accepting payments from you is July 1, 2011. Send all payments due on or after that date to Bank of America, N.A.

Optional insurance, such as life and disability insurance coverage, will continue without interruption. If, for some reason, your current coverage cannot be continued by Bank of America, N.A., you will be given separate notice and offered other alternatives without interruption in your coverage.

ADDITIONAL RIGHTS UNDER THE REAL ESTATE SETTLEMENT PROCEDURES ACT (RESPA)
We want to make you aware of certain rights you have under RESPA. A summary is provided on the back of this notice.

SEE REVERSE SIDE FOR IMPORTANT CONSUMER INFORMATION

Bank of America, N.A. Member FDIC.  Bank of America, N.A. is an Equal Housing Lender.
©2011 Bank of America Corporation.  Trademarks are the property of Bank of America Corporation.  All rights reserved.

*93*

EXHIBIT 9 – ASSIGNMENT OF DEED OF TRUST, RECORDED ON OCTOBER 7TH, 2011 IN THE OFFICIAL RECORDS OF COUNTY OF SAN BERNARDINO, MERS TO BONY ASSIGNMENT

Branch :IRV,User :AD08      Comment:      Station Id :CNV6

Recording Requested By:
Bank of America
Prepared By: Lori Pich
400 E. Boundary St.
Chapin, SC 29036
888-685-9911
When recorded mail to:
CoreLogic
400 E. Boundary St.
Attn: Release Dept.
Chapin, SC 29036

Recorded in Official Records, County of San Bernardino

**DENNIS DRAEGER**
ASSESSOR – RECORDER – CLERK

☐ Priority Mail

Doc#: 2011 - 0421286    Titles: 1   Pages: 2

DocID# 00712003700118949

Property Address:
3409 Circle Rd
San Bernardino, CA 92405-3906
CA6-057 050004

MIN #: 1001204-0129487081-0     MERS Phone #: 888-679-6377

## ASSIGNMENT OF DEED OF TRUST

For Value Received, the undersigned holder of a Deed of Trust (herein "Assignor") whose address is 1300 S.W. 34th Avenue, Suite 101 Ocala, FL 34474 does hereby grant, sell, assign, transfer and convey unto **THE BANK OF NEW YORK MELLON FKA THE BANK OF NEW YORK, AS TRUSTEE FOR THE CERTIFICATEHOLDERS OF CWALT, INC., ALTERNATIVE LOAN TRUST 2006-OC3, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OC3** whose address is 101 BARCLAY ST - 4W, NEW YORK ,NY 10286 all beneficial interest under that certain Deed of Trust described below together with the note(s) and obligations therein described and the money due and to become due thereon with interest and all rights accrued or to accrue under said Deed of Trust.

Original Lender:     **BONDCORP REALTY SERVICES, INC.**
Original Borrower(s):     **MARGUERITE DESELMS, AN UNMARRIED WOMAN**
Original Trustee:     **CHICAGO TITLE COMPANY**
Date of Deed of Trust:     **7/31/2006**
Original Loan Amount:     **$340,000.00**

Recorded in San Bernardino County,CA on: 8/14/2006, book N/A, page N/A and instrument number 2006-0552510

IN WITNESS WHEREOF, the undersigned has caused this Assignment of Deed of Trust to be executed on
03/14/11

MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.

By: _Edward Gallegos_
Edward Gallegos, Assistant Secretary

95

Branch :IRV,User :AD08                    Comment:                                    Station Id :CNV6

State of California
County of Ventura

On Sept 14 2011 before me, Eric Thuy_____, Notary Public, personally appeared
Edward Gallegos, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are
subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their
authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s) or the entity upon
behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing
paragraph is true and correct.

WITNESS my hand and official seal.

Notary Public: Eric Thuy _____          (Seal)
My Commission Expires: Feb 7 2013

ERIC T. THUY
Commission # 1835512
Notary Public - California
Los Angeles County
My Comm. Expires Feb 7, 2013



**EXHIBIT 10 BOA NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS – NOVEMBER 23RD, 2011**

Bank of America

Home Loans

P.O. Box 5170
SIMI VALLEY, CA 93065-6170

MARGUERITE DESELMS
364 W 3RD ST
SAN PEDRO, CA 90731

Send Correspondence to:
P.O. Box 5170
Simi Valley, CA 93065-5170

Business Address
400 Amorican Street
Simi Valley, CA 93065-6285

**Notice Date:** November 20, 2011

**Account No.:** 129887081

**Property Address:**
3495 Circle Road
San Bernardino, CA 92405

You are hereby notified that the servicing of your mortgage loan, that is, the right to collect payments from you, is being assigned, sold or transferred from Bank of America, N.A. to Specialized Loan Servicing, LLC effective January 01, 2012.

**NOTICE OF ASSIGNMENT, SALE, OR TRANSFER OF SERVICING RIGHTS:**

This assignment, sale or transfer of the servicing of your mortgage loan does not affect any terms or conditions of the mortgage instruments, other than those provisions directly related to the servicing of your loan.

Except as limited circumstances, the law requires that your present servicer send you this notice at least 15 days before the effective date of transfer, or at closing. Your new servicer must also send you this notice no later than 15 days after this effective date or at closing.

**YOUR PRESENT SERVICER:**

Your present servicer is Bank of America, N.A. If you have any questions relating to the transfer of servicing from Bank of America, N.A. call Customer Service toll-free, at 1-800-669-6607 between Monday-Friday 7 a.m. - 7 p.m. Local Time.

**YOUR NEW SERVICER CONTACT AND PAYMENT REMITTANCE ADDRESS:**

Your new servicer will be Specialized Loan Servicing, LLC. The business address for your new servicer is 8742 Lucent Blvd, Suite 300, Highlands Ranch, CO 80129. The address to send correspondence is P.O. Box 636005, Littleton, CO 80163-6005. Payments are to be sent to: ATTN Remittance Processing, P.O. Box 105219, Atlanta, GA 30348-5219. If you have any questions relating to the transfer of servicing to your new servicer call Specialized Loan Servicing, LLC, toll-free at 1-800-315-4757 between 6:00 AM to 6:00 PM, Mountain Standard Time, Monday through Friday.

Your call may be monitored or recorded to ensure quality service.

Your loan fee is being transferred to your new servicer.

**INFORMATION CONCERNING YOUR LOAN PAYMENTS:**

The date that Bank of America, N.A. will stop accepting payments from you is December 15, 2011. The date that your new servicer Specialized Loan Servicing, LLC will start accepting payments from you is December 16, 2011. Send all payments on or after that date to your new servicer. Your new servicer will send you new billing statements. If you have a payment due before you receive your new billing statement, write your new servicer's loan number on your check and mail it to your new servicer at the payment address shown above. Until you receive a new loan number, you may write your old loan number on the check.

If your payments were made by automatic debit. This service will be discontinued upon transfer of your loan from Bank of America, N.A. to your new servicer. You will need to contact your new servicer in order to establish electronic debit payments.

If your payments included any optional insurance such as accidental death, unemployment insurance, etc, you will need to contact your new servicer to discuss coverage options.

**IMPORTANT INFORMATION REGARDING A LOAN MODIFICATION:**

If you are currently participating in or being considered for a loan modification program such as the Home Affordable Modification Program, we will be transferring any supporting documentation you may have provided to us to your new servicer. Until the transfer date, you should continue to make your payments (e.g. trial payments if applicable) to qualify for a modification to Bank of America, N.A. After transfer, you should make all payments to Specialized Loan Servicing, LLC until such time that you are provided additional information. All information regarding other foreclosure avoidance programs (e.g. forbearance, short sale, refinance or deed-in-lieu of foreclosure) will be forwarded to Specialized Loan Servicing, LLC for processing. Decisions regarding qualification for these programs will be made by Specialized Loan Servicing, LLC. Please be advised that this transfer may extend the time needed for a loan approval or pending modification or other foreclosure prevention program requests.

**OTHER INFORMATION FROM BANK OF AMERICA, N.A.:**

If there is an escrow account associated with your loan, Bank of America, N.A. will provide you within 60 days of the transfer a short-year statement that shows escrow transactions from the date of your last year-end statement or escrow analysis to the date of transfer. If any check or other instrument received by Bank of America, N.A. clears returned unpaid, you remain liable to Bank of America, N.A. for the amount elapsed. At year end, you will receive a statement of account from Bank of America, N.A. for payments received and applied to your account through December 15, 2011. This statement is for year end when reporting your tax return. If you have any questions, please contact Bank of America, N.A. at the toll-free number listed above.

Sincerely,

Customer Service Department

This communication is from Bank of America, N.A., the servicer of your home loan.

**SEE REVERSE SIDE FOR IMPORTANT INFORMATION**

Bank of America, N.A. is required by law to inform you that this communication is from a debt collector attempting to collect a debt, and any information obtained will be used for that purpose.

98



- 63L1143 680221332 994431 397563J
MARGUERITE DEGELMS
3489 CIRCLE RD
SAN BERNARDINO CA 92405-2046

12/25/2011

RE   Loan Number:        1006515122
     Property Address:   3489 CIR RD
                         SAN BERNARDINO CA 92405

**Loan Information**
Prior Servicer                                                    BANK OF AMERICA
Current Creditor      The Bank of New York Mellon FKA The Bank of New York, as Trustee for
                      the certificateholders of the CWALT, Inc. ALTERNATIVE LOAN TRUST
                      2006-OC8 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES
                                                                      2006-OC8

Original Principal Balance                                          $340000.00

**Debt Information as of 12/01/11**
Next Payment Due Date                                               08/01/09
Unpaid Principal Balance                                          $340000.00
Deferred Principal Amount                                              $0.00
Deferred Interest Amount                                               $0.00
Interest Uncollected                                              $54718.75
Escrow Balance/Advances                                            $5853.24
Total outstanding fees                                             $2863.54
Total Debt                                                       $403435.53

Please note that the Total Debt does not include any fees or interest that may accrue after the
date of this letter and does not necessarily represent the current amount required to pay your
loan in full

**IMPORTANT INFORMATION IS ON THE NEXT PAGE, PLEASE READ IT**

99

EXHIBIT 11, SUBSTITUTION OF TRUSTEE – RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO, DOCUMENT # 2014-025564 – JULY 15TH, 2014.

RECORDING REQUESTED BY:

LSI Title Agency - FIS Default Solutions
Fidelity National Title

AND WHEN RECORDED MAIL TO:
Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606

Electronically Recorded in Official Records, County of San Bernardino   7/18/2014
12:54 PM

**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK
401 LSI Title Company

Doc #: **2014-0255624**    Titles: 1   Pages: 1

Fees     16.00
Taxes      .00
Other      .00
PAID     18.00

TS No.: 14-30405

## SUBSTITUTION OF TRUSTEE

WHEREAS, MARGUERITE DESELMS, AN UNMARRIED WOMAN was the original Trustor, CHICAGO TITLE COMPANY was the original Trustee, and BONDCORP REALTY SERVICES, INC. as Lender, Mortgage Electronic Registration Systems, Inc. was the original Beneficiary under that certain Deed of Trust dated 7/31/2006 and recorded on 8/14/2006, as Instrument Number 2006-0552510 of Official Records of San Bernardino County, California; and

WHEREAS, the undersigned is the present Beneficiary under said Deed of Trust, and

WHEREAS, the undersigned desires to substitute a new Trustee under said Deed of Trust in place and instead of said original Trustee, or Successor Trustee, thereunder, in the manner in said Deed of Trust provided,

NOW, THEREFORE, the undersigned hereby substitutes LAW OFFICES OF LES ZIEVE, 30 Corporate Park, Suite 450, Irvine, CA 92606 as Trustee under said Deed of Trust. Whenever the context hereof so requires, the masculine gender includes the feminine and/or neuter, and the singular number includes the plural.

Dated:  **JUN 0 6 2014**

The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc.,
ALTERNATIVE LOAN TRUST 2006-OC9 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OC9
By: Specialized Loan Servicing LLC, its attorney in fact

Daniel Leon
Second Assistant Vice President

State of  **Colorado**

County of  **Douglas**

On **6/6/14** before me,   **Dedra Kay Dee**   Notary Public, personally appeared   **Daniel Leon**   who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument. I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature _____ (Seal)

**DEDRA KAY DEE**
**NOTARY PUBLIC**
**STATE OF COLORADO**
NOTARY ID 20144004254
My Commission Expires January 30, 2019

181

EXHIBIT 12 NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO, COUNTY, DOCUMENT NUMBER 2014-0255625, RECORDED ON JULY 15TH, 2014.

RECORDING REQUESTED BY:

WHEN RECORDED MAIL TO:

**Law Offices of Lee Zieve**
30 Corporate Park, Suite 450
Irvine, CA 92606

Electronically Recorded in Official Records, County of San Bernardino   7/18/2014
                                                                          12:54 PM

**DENNIS DRAEGER**
ASSESSOR - RECORDER - CLERK
401 LSI Title Company

Doc #: **2014-0255625**   Titles: 1   Pages: 4

| Fees | 27.00 |
| Taxes | .00 |
| Other | .00 |
| PAID | 27.00 |

---

TS No.: 14-28485
APN: 0151-161-14-0-000

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

**PURSUANT TO CIVIL CODE § 2923.3(a), THE SUMMARY OF INFORMATION REFERRED TO BELOW IS NOT ATTACHED TO THE RECORDED COPY OF THIS DOCUMENT BUT ONLY TO THE COPIES PROVIDED TO THE TRUSTOR.**

NOTE. THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

### IMPORTANT NOTICE

**IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS IT MAY BE SOLD WITHOUT ANY COURT ACTION,** and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date this notice of default may be recorded (which date of recordation appears on this notice)

This amount is **$102,133.39** as of **7/11/2014**, and will increase until your account becomes current. While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your Note and Deed of Trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the Note and Deed of Trust or mortgage, the Beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the Beneficiary or mortgagee may require as a condition of reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made.

103

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

TS No. 14-28485

However, you and your Beneficiary or mortgagee may mutually agree in writing prior to the time the Notice of Sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) Provide additional time in which to cure the default by transfer of the property or otherwise; or (2) Establish a schedule of payments in order to cure your default; or, both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement between you and your creditor permits a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

**To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact:**

**The Bank of New York Mellon FKA The Bank of New York, as Trustee for the certificateholders of the CWALT, Inc., ALTERNATIVE LOAN TRUST 2006-OC8 MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2006-OC8**
**C/O Specialized Loan Servicing, LLC**
**Phone: (800)315-4757**
**C/O Law Offices of Les Zieve**
**30 Corporate Park, Suite 450**
**Irvine, CA 92606**
**Phone: 714-848-7920**

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale provided the sale is concluded prior to the conclusion of the foreclosure.
**Remember, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

NOTICE IS HEREBY GIVEN:  That  LAW OFFICES OF LES ZIEVE is either the original Trustee, the duly appointed substituted Trustee, or acting as agent for the Trustee or Beneficiary under a Deed of Trust dated  7/31/2006, executed by  MARGUERITE DESELMS, AN UNMARRIED WOMAN, as Trustor, to secure certain obligations in favor of BONDCORP REALTY SERVICES, INC. as Lender, Mortgage Electronic Registration Systems, Inc. as Beneficiary, recorded 8/14/2006, as Instrument No. 2006-0552519 of Official Records in the Office of the Recorder of  San Bernardino County, California describing land therein as: As more particularly described on said Deed of Trust.

The subject obligation includes  NOTE(S) FOR THE ORIGINAL sum of $340,000.00.  A breach of, and default in,  the obligations for which such Deed of Trust is security has occurred in that payment has not been made of the following:
The monthly installment of principal and interest which became due on 8/1/2009, late charges, and all subsequent monthly installments of principal and interest.
You are responsible to pay all payments and charges due under the terms and conditions of the loan documents which come due subsequent to the date of this notice, including, but not limited to, foreclosure trustee fees and costs, advances and late charges.
Furthermore, as a condition to bring your account in good standing, you must provide the undersigned with written proof that you are not in default on any senior encumbrance and provide proof of insurance.
Nothing in this notice of default should be construed as a waiver of any fees owing to the beneficiary under the deed of trust, pursuant to the terms and provisions of the loan documents.

104

# NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

TS No. 14-28498

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to said duly appointed Trustee, a written Declaration of Default and Demand for same, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby

WE ARE ASSISTING THE BENEFICIARY TO COLLECT A DEBT AND ANY INFORMATION WE OBTAIN WILL BE USED FOR THE PURPOSE BY EITHER OURSELVES OR THE BENEFICIARY, WHETHER RECEIVED ORALLY OR IN WRITING.  YOU MAY DISPUTE THE DEBT OR A PORTION THEREOF UPON WRITTEN REQUEST WITHIN THIRTY (30) DAYS.  THEREAFTER WE WILL OBTAIN AND FORWARD TO YOU WRITTEN VERIFICATION THEREOF.  SHOULD YOU NOT DO SO, THE DEBT WILL BE CONSIDERED VALID.  IN ADDITION, YOU MAY REQUEST THE NAME AND ADDRESS OF THE ORIGINAL CREDITOR IF DIFFERENT FROM THE CURRENT ONE.

The loan servicer has fulfilled its obligation under either California Civil Code section 2923.5 or 2923.55 (as applicable).  Please see Declaration of Compliance attached hereto.

Dated: 7/11/2014

LAW OFFICES OF LES ZIEVE, as Trustee

Anthony Tran, Trustee Sale Officer

105

## CALIFORNIA DECLARATION OF COMPLIANCE
### (Civil Code § 2923.55(c))

Borrower(s): MARGUERITE DESELMS
Mortgage Servicer: Specialized Loan Servicing LLC
Property Address: 3489 CIRCLE RD

SAN BERNARDINO      CA 92405

T.S No:   14-26485

The undersigned, as an authorized agent or employee of the mortgage servicer named below, declares that:

1. ☑ The mortgage servicer has contacted the Borrower pursuant to California Civil Code § 2923.55(b)(2) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since the initial contact was made.

2. ☐ The mortgage servicer has exercised due diligence to contact the borrower pursuant to California Civil Code § 2923.55(f) to "assess the borrower's financial situation and explore options for the borrower to avoid foreclosure". Thirty (30) days, or more, have passed since these due diligence efforts were satisfied.

3. ☐ No contact was required by the mortgage servicer because the individual did not meet the definition of 'borrower' pursuant to California Civil Code subdivision (c) of § 2920.5(c).

4. ☐ The requirements of California Civil Code § 2923.55 do not apply because the loan is not secured by a first lien mortgage or deed of Trust on "owner occupied" residential real property as defined by California Civil Code § 2924.15.

I certify and represent that this mortgage servicer's declaration is accurate, complete and based upon competent and reliable evidence, which the mortgage servicer has reviewed including my review of the mortgage servicer's business records, to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

Date:                                    Specialized Loan Servicing LLC, as servicer for The Bank
                                         of New York Mellon FKA The Bank of New York, as
                                         Trustee for the certificateholders of the CWALT, Inc.,
         JUN 10 2014                     ALTERNATIVE LOAN TRUST 2006-OC8 MORTGAGE
                                         PASS-THROUGH CERTIFICATES, SERIES 2006-OC8

                                         By:  Daniel Leon
                                              Second Assistant Vice President

                     ATTACHMENT TO NOTICE OF DEFAULT

106

EXHIBIT 13 – NOTICE OF RESCISSION OF DECLARATION OF DEFAULT AND DEMAND FOR SALE AND NOTICE OF BREACH AND ELECTION TO SELL UNDER DEED OF TRUST, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, DOCUMENT 2015-0042564 ON FEBRUARY 3RD, 2015.

RECORDING REQUESTED BY:



Electronically Recorded in Official Records, County of San Bernardino

**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
401 LSI Title Company

Doc #: **2015-0042564**

2/03/2015
11:58 AM
FV
SAN

| Titles: | 1 | Pages: | 1 |
| Fees | | | 25.00 |
| Taxes | | | .00 |
| Other | | | .00 |
| PAID | | | 25.00 |

AND WHEN RECORDED MAIL TO

Law Offices of Les Zieve
30 Corporate Park, Suite 450
Irvine, CA 92606

---

TS No.: 14-29485          APN: 0151-151-14-0-000
Property Address:
3499 CIRCLE ROAD
SAN BERNARDINO, California 92405

## NOTICE OF RESCISSION
### OF DECLARATION OF DEFAULT AND DEMAND FOR SALE
### AND OF NOTICE OF BREACH AND ELECTION TO SELL UNDER DEED OF TRUST

**NOTICE IS HEREBY GIVEN:** That **LAW OFFICES OF LES ZIEVE** is duly appointed Trustee under a Deed of Trust dated 7/31/2006, executed by **MARGUERITE DESELMS, AN UNMARRIED WOMAN**, as Trustor, to secure certain obligations in favor of **BONDCORP REALTY SERVICES, INC.** as Lender, **Mortgage Electronic Registration Systems, Inc.,** as Beneficiary, recorded 8/14/2006, as Instrument No.2006-0562010, in book , page , of Official Records in the Office of the Recorder of San Bernardino County, California describing land therein as more fully described on the above referenced deed of trust.

   **WHEREAS:** The present beneficiary under that certain Deed of Trust herein above described, heretofore delivered to the Trustee thereunder written Declaration of Default and Demand for Sale; and

   **WHEREAS:** Notice was heretofore given of breach of obligations for which said Deed of Trust is security and of election to cause to be sold the property therein described.

   **NOW THEREFORE:** Notice is hereby given that the present Beneficiary and/or the Trustee, does hereby rescind, cancel and withdraw said Declaration of Default and Demand for Sale and said Notice of Breach and Election to Cause Sale; It being understood, however, that this rescission shall not in any manner be construed as waiving or affecting any breach of default past, present or future under said Deed of Trust, or as impairing any right or remedy thereunder, but is, and shall be deemed to be, only an election, without prejudice, not to cause a sale to be made pursuant to said Declaration and Notice, and shall no way jeopardize or impair any right, remedy or privilege secured to the Beneficiary and/or the Trustee, under said Deed of Trust, nor modify nor alter in any respect, any of the terms, covenants, conditions or obligations thereof, and said Deed of Trust and all obligations secured thereby are hereby reinstated and shall be and remain in force and effect the same as if said Declaration of Default and Notice of Breach had not been made and given. Said Notice was recorded on 7/15/2014 as Instrument No 2014-0255625, in Book , Page , of Official Records in the office of the Recorder of San Bernardino County, California

Dated: 1/28/2015

Law Offices Of Les Zieve as Trustee

Ryan Bradford, Trustee Sale Officer

108

**EXHIBIT 14 – NOTICE OF DEFAULT RECORDED ON NOVEMBER 22ND, 2017 IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, DOCUMENT 2017-0500430**

109

**STEWART TITLE**

RECORDING REQUESTED BY:

STEWART TITLE ~~OF CALIFORNIA, INC. A~~
~~CALIFORNIA CORPORATION~~

WHEN RECORDED MAIL TO:

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

Electronically Recorded in Official Records, County of San Bernardino    11/22/2021
                                                                          01:26 PM
                                                                          NC

**BOB DUTTON**
ASSESSOR - RECORDER - CLERK
43G  Stewart Title Guaranty Company

Doc #: **2017-0500430**     Titles:  1     Pages:  3

                            Fees        51.00
                            Taxes        .00
                            Other        .00
                            PAID        53.00

APN: 0151-151-14-0-000          TS No: CA08001415-17-1          TO No: 17-0008514-01

## NOTICE OF DEFAULT AND ELECTION TO SELL UNDER DEED OF TRUST

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED

注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY

(The above statement is made pursuant to CA Civil Code Section 2923.3(a)(1).  The Summary will be provided
to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(a)(2).)

**IMPORTANT NOTICE**

IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR
PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal
right to bring your account in good standing by paying all of your past due payments plus permitted costs
and expenses within the time permitted by law for reinstatement of your account, which is normally five
business days prior to the date set for the sale of your property.  No sale date may be set until
approximately 90 days from the date this Notice of Default may be recorded (which date of recording
appears on this notice).

This amount is $51,984.72 as of November 13, 2017, and will increase until your account becomes
current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes)
required by your Note and Deed of Trust or Mortgage.  If you fail to make future payments on the loan,
pay taxes on the property, provide insurance on the property, or pay other obligations as required in the
Note and Deed of Trust or Mortgage, the Beneficiary or Mortgagee may insist that you do so in order to
reinstate your account in good standing.  In addition, the Beneficiary or Mortgagee may require as a
condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property
taxes, and hazard insurance premiums.

Upon your written request, the Beneficiary or Mortgagee will give you a written itemization of the entire
amount you must pay.  You may not have to pay the entire unpaid portion of your account, even though
full payment was demanded, but you must pay all amounts in default at the time payment is made.
However, you and your Beneficiary or Mortgagee may mutually agree in writing prior to the time the
Notice of Sale is posted (which may not be earlier than the end of the three-month period stated above)
to, among other things, (1) provide additional time in which to cure the default by transfer of the property
or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the
obligation being foreclosed upon or a separate written agreement between you and your creditor permits

110

APN: 0151-161-14-0-000          TS No: CA08001415-17-1          TO No: 17-0006514-01

a longer period, you have only the legal right to stop the sale of your property by paying the entire amount demanded by your creditor.

To find out the amount you must pay, or to arrange for payment to stop the foreclosure, or if your property is in foreclosure for any other reason, contact: The Bank of New York Mellon FKA The Bank of New York as Successor Trustee to JPMorgan Chase Bank, N.A. as Trustee on behalf of the Certificateholders of the CWHEQ Inc., CWHEQ Revolving Home Equity Loan Trust, Series 2006-H c/o MTC Financial Inc. dba Trustee Corps located at 17100 Gillette Ave Irvine, CA 92614 Phone: 949-252-8300 TDD: 866-660-4288 Ref No: CA08001415-17-1

If you have any questions, you should contact a lawyer or the governmental agency which may have insured your loan.  Notwithstanding the fact that your property is in foreclosure, you may offer your property for sale, provided the sale is concluded prior to the conclusion of the foreclosure.

**REMEMBER, YOU MAY LOSE LEGAL RIGHTS IF YOU DO NOT TAKE PROMPT ACTION.**

**NOTICE IS HEREBY GIVEN THAT: MTC Financial Inc. dba Trustee Corps is the original Trustee, duly appointed Substituted Trustee, or acting as Agent for the Trustee or Beneficiary under a Deed of Trust dated as of July 31, 2006, executed by MARGUERITE DESELMS, AN UNMARRIED WOMAN, as Trustor(s), to secure obligations in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for BONDCORP REALTY SERVICES, INC., A CALIFORNIA CORPORATION, the original Beneficiary, recorded August 14, 2006 as instrument No. 2006-0552511, of the official records in the Office of the Recorder of San Bernardino County, California, as more fully described on said Deed of Trust.  Including a Note(s) for the sum of $85,000.00 that the beneficial interest under Deed of Trust and the obligations secured thereby are presently held by the Beneficiary; that a breach of, and default in, the obligations for which said Deed of Trust is security has occurred in that the payment has not been made of: THE INSTALLMENT OF PRINCIPAL AND INTEREST WHICH BECAME DUE ON August 20, 2008 AND ALL SUBSEQUENT INSTALLMENTS OF PRINCIPAL AND INTEREST, ALONG WITH LATE CHARGES, PLUS ALL OF THE TERMS AND CONDITIONS AS PER THE DEED OF TRUST, PROMISSORY NOTE AND RELATED LOAN DOCUMENTS.**

That by reason thereof, the present Beneficiary under such Deed of Trust, has executed and delivered to MTC Financial Inc. dba Trustee Corps, said Trustee, a written Declaration and Demand for Sale, and has deposited with said duly appointed Trustee, such Deed of Trust and all documents evidencing the obligations secured thereby, and has declared and does hereby declare all sums secured thereby immediately due and payable and has elected and does hereby elect to cause the trust property to be sold to satisfy the obligations secured thereby.

Where required by law, a declaration pursuant to California Civil Code Section 2923.5(b) or California Civil Code Section 2923.55 is attached.

Dated: November 13, 2017          **MTC Financial Inc. dba Trustee Corps as Duly Appointed Successor Trustee**

By: Myron Ravelo, Authorized Signatory

MTC Financial Inc. dba Trustee Corps may be acting as a debt collector attempting to collect a debt. Any information obtained may be used for that purpose.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

111

CB_13106 CA-DECLARATIONS 18099 3/3/2015

**Bank of America**

Home Loans

Mail Stop: PTX A-85
7105 Corporate Drive
Plano, TX 75024

**Notice Date:** October 11, 2017

**Account No.:**

Marguerite Deselms
984 W 3rd St
San Pedro, CA 90731

**Property Address:**
3489 Circle Road
San Bernardino, CA 92405

## CALIFORNIA DECLARATION

I, Davis Smith , Officer, Mtg Servicing Specialist Lead of Bank of America ("BANA")
at BANA Home Loans, declare under the laws of the State of California, that I have reviewed
Bank of America, N.A.'s business records maintained in the ordinary course of business, and
having personal knowledge of the contents of these records, hereby state, that those business
records reflect that:

BANK OF AMERICA, N.A. has,

1. ☒ Contacted the borrower to assess the borrower's financial situation and to explore options
for the borrower to avoid foreclosure in accordance with California Civil Code §2923.55(b)(2).

2. ☐ Tried with due diligence to contact the borrower in order to assess their financial situation
and to explore options for the borrower to avoid foreclosure in accordance with California Civil
Code Section 2923.55(f), including by:

    a.    providing the borrower a toll-free telephone number providing access to a live
        representative during business hours;

    b.    posting a prominent link on its internet website homepage to the information
        required by California Civil Code §2923.55(f)(5)(A)-(D);

    c.    sending a letter via first class mail to the borrower(s);

    d.    attempting to contact the borrower on three separate days at a different time
        each day;

    e.    sending a letter via certified mail, return receipt requested.

3. ☐ Determined that the provisions of California Civil Code §2923.55 do not apply because the
loan was not for owner-occupied residential real property (principal residence), as defined by
California Civil Code § 2924.15.

10/11/2017    Addison, TX
Date and Place

Davis Smith
Name of Signer

112

TS No. CA08001415-17-1

## NOTICE OF DEFAULT
## SUMMARY OF KEY INFORMATION

The attached notice of default was sent to MARGUERITE DESELMS, AN UNMARRIED WOMAN, in relation to 3489 CIRCLE ROAD, SAN BERNARDINO, CA 92406. This property may be sold to satisfy your obligation and any other obligation secured by the deed of trust or mortgage that is in default. MARGUERITE DESELMS, AN UNMARRIED WOMAN has, as described in the notice of default, breached the mortgage or deed of trust on the property described above.

IMPORTANT NOTICE: IF YOUR PROPERTY IS IN FORECLOSURE BECAUSE YOU ARE BEHIND IN YOUR PAYMENTS, IT MAY BE SOLD WITHOUT ANY COURT ACTION, and you may have the legal right to bring your account in good standing by paying all of your past due payments plus permitted costs and expenses within the time permitted by law for reinstatement of your account, which is normally five business days prior to the date set for the sale of your property. No sale date may be set until approximately 90 days from the date the attached notice of default may be recorded (which date of recordation appears on the notice).

This amount is $51,994.72 as of November 13, 2017 and will increase until your account becomes current.

While your property is in foreclosure, you still must pay other obligations (such as insurance and taxes) required by your note and deed of trust or mortgage. If you fail to make future payments on the loan, pay taxes on the property, provide insurance on the property, or pay other obligations as required in the note and deed of trust or mortgage, the beneficiary or mortgagee may insist that you do so in order to reinstate your account in good standing. In addition, the beneficiary or mortgagee may require as a condition to reinstatement that you provide reliable written evidence that you paid all senior liens, property taxes, and hazard insurance premiums.

Upon your written request, the beneficiary or mortgagee will give you a written itemization of the entire amount you must pay. You may not have to pay the entire unpaid portion of your account, even though full payment was demanded, but you must pay all amounts in default at the time payment is made. However, you and your beneficiary or mortgagee may mutually agree in writing prior to the time the notice of sale is posted (which may not be earlier than three months after this notice of default is recorded) to, among other things, (1) provide additional time in which to cure the default by transfer of the property or otherwise; or (2) establish a schedule of payments in order to cure your default; or both (1) and (2).

Following the expiration of the time period referred to in the first paragraph of this notice, unless the obligation being foreclosed upon or a separate written agreement

Civil Code Section 2923.3(c)(2)



113

EXHIBIT 15, GRANT DEED RECORDED ON JUNE 1, 2017, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, 2017-0226015

114

RECORDING REQUESTED BY

AND WHEN RECORDED MAIL DOCUMENT AND
TAX STATEMENT TO:

NAME Marguerite DeSelms
STREET ADDRESS 3451 W. 79th St
CITY, STATE & ZIP CODE Los Angeles, CA
90043

Recorded in Official Records, County of San Bernardino
6/01/2017
4:53 PM
**BOB DUTTON**
ASSESSOR – RECORDER – CLERK   ICE
                                SAN
P Counter

Doc#: 2017-0226015   Titles: 1   Pages: 27

Fees    $9.00
Taxes   0.00
Other   0.00
PAID    $83.99

TITLE ORDER NO.          ESCROW NO.          SPACE ABOVE THIS LINE FOR RECORDER'S USE ONLY

## GRANT DEED

APN U151-161-14-0-000   The undersigned grantor(s) declare(s):
DOCUMENTARY TRANSFER TAX $ 0
[X] computed on full value of property conveyed, or
[ ] computed on full value less liens and encumbrances remaining at time of sale.
[ ] Unincorporated Area  [ ] City of _____

FOR VALUABLE CONSIDERATION, receipt of which is hereby acknowledged, I (We)
MARGUERITE CONSUELO DESELMS

hereby remise, release and grant to
Marguerite Consuelo DeSelms, an Unmarried Woman
the following described real property in the City of San Bernardino, County of San Bernardino
State of California, with the following legal description: Legal description and certified copy of
Grant Deed attached hereto and made a part hereof e's per
Exhibit 4. See reference Exhibits 1-4 attached hereto and made
part thereof: Exh.1 Affidavit Status, Exh 2: Affidavit Secured Property Interest
Exh 3: Deed Revocation, Exh 4: Cert. Acknowledgement

6-01-17
_____          _____
Marguerite Consuelo DeSelms        Signature of Grantor
Typed or Printed Name of Grantor   Typed or Printed Name of Grantor

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which
this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

STATE OF CALIFORNIA
COUNTY OF SAN BERNARDINO
On JUNE 1, 2017 before me, SAM ASIM ANSARI, NOTARY PUBLIC
        (Date)                              (Name and title of the officer)
personally appeared MARGUERITE CONSUELO DESELMS, who proved to me on the basis of
                     (Name(s) of signer)
satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity
upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

_____
Signature of officer

[Notary Seal: SAM ASIM ANSARI
Comm. # 7033342
NOTARY PUBLIC-CALIFORNIA
San Bernardino County
My Comm. Exp. Aug. 18, 2017]

(Seal)

* There are various types of deed forms depending on each person's legal status. Before you use this form you may want to consult an
attorney if you have questions concerning which document form is appropriate for your transaction.

115

# EXHIBIT A

**PHYSICAL ADDRESS:**
3489 Circle Rd, San Bernardino, CA 92405

**Legal Description:** APN: 0151-161-14-0-000

All that portion of Lot 7 of Tract 2508, as per Plat recorded in Book 36 of Maps, Pages 8 and 9, Records of San Bernardino County, State of California, described as follows: Beginning at the Southwest corner of said Lot 7; thence North 76° 39' East on the Southerly line of said Lot a distance of 120 feet; thence North 03° 30'West 164.05 feet; thence South 61° 35' 30" West, 143.90 feet to a point on the Easterly line of Circle Road; thence Southerly along a curve concave to the East with a radius of 580 feet, a distance of 90.76 feet; thence along a curve concave to the West with a radius of 113 feet a distance of 34.73 feet to the point of beginning.

116

# EXHIBIT 1

## AFFIDAVIT OF STATUS

117

# AFFIDAVIT OF Marguerite Consuelo DeSelms

STATE OF CALIFORNIA     )
                              ) SS
COUNTY OF SAN BERNARDINO)

Comes now, Marguerite Consuelo DeSelms, your Affiant, being competent to testify and being over the age of 21 years of age, after first being duly sworn according to law to tell the truth to the facts related herein states that she has firsthand knowledge of the facts stated herein and believes these facts to be true to the best of her knowledge.

1. That your Affiant is one of the People of these united States of America, being a creation of God and born in one of the several States.

2. Your Affiant is a living, breathing, sentient being on the land, a Natural Person, and therefore is not and cannot be any ARTIFICIAL PERSON and, therefore, is exempt from any and all identifications, treatments, and requirements as any ARTIFICIAL PERSON pursuant to any process law, code, or statute or any color thereof.

3. Your Affiant notices that in these united States of America, the authority of any and all governments resides in the People, the Natural Persons, of the land, for government is a fiction of the mind and can only be created by the People, effected by the People, and overseen by the People for the benefit of only the People.

4. Your Affiant at all times claims all and waives none of her God given inherent, unlimited, unalienable, secured and guaranteed Rights pursuant to the Declaration of Independence and the Constitution of the united States of America as ratified 1791 with the Articles of the Amendments.

5. Your Affiant notices that pursuant to the Constitution of the united States of America as ratified 1791 with the Articles of the Amendments, Article VI paragraph 2, "This Constitution and the Laws of the united States which shall be made in Pursuance thereof, and all Treaties made, under the authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding."

6. Your Affiant Notices, that as a matter of their lawful compliance to the referenced Constitution, any of the People, while functioning in any Public capacity, in return for the trust of the other People, are granted limited delegated authority of and by the People, with specific duties delineated in accordance thereof, shall only do so pursuant to a lawfully designated, sworn and subscribed Oath of Office and with any and all bonds and other requirements thereof, to ensure their faithful performance to the other People.

7. Your Affiant notices that the only court lawfully authorized by the People pursuant to said Constitution to hear matters in controversy of the People, civil or criminal, is a court that conform to and functions in accordance with Article III Section 2 of said Constitution in which all officers of the court have and abide by their sworn and subscribe oaths of office supporting and defending the Rights of the People, and in



118

which all matters are heard in accordance with all aspects of due process of law and only Trial by jury and in keeping with the Amendments V, VI, and VII.

8. Your Affiant notices that pursuant to this supreme Law of the Land and the God given Rights secured and guaranteed therein, said Constitution is established to ensure that the dominion granted by God to all People, on this land, shall endure, and ensure forever that this People on this land be free from any and all slavery, indenturement, tyranny, and oppression under color of any law, statute, code, policy, procedure, or of any other type.

9. Your Affiant further notices that pursuant to said Constitution, Affiant cannot be compelled, manipulated, extorted, tricked, threatened, placed under duress, or coerced, or so effected by any Natural Person, who individually, or in any capacity as or under any Artificial Person, agency, entity, officer, or party, into the waiving of any of Affiant's Rights or to act in contradiction thereof, or to act in opposite of the moral conscience and dominion granted Affiant by God, nor can Affiant be deprived of any of these Rights, privileges, and immunities except by lawful process in accordance with said Constitution, without that Natural and/or Artificial Person, in whatever capacity, In so doing, causing injury to your Affiant and thereby committing numerous crimes, requiring lawful punishment therefrom.

Further, Affiant sayeth naught.

*Marguerite Consuelo DeSelms*

Marguerite Consuelo DeSelms

State of CALIFORNIA County of SAN BERNARDINO

On _____, 2017 before me,_____, a Notary Public duly authorized by the State of California, personally appeared ~~Chris Ann Gross~~, who proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the within instrument and acknowledged to me that she executed the same in her authorized capacity, and that by her signature on the instrument the person acted, executed the instrument.

*see attached*

I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the foregoing paragraph is true and correct.

Witness my hand and official seal.
(seal)

_____
Notary Public

119

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**     CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of **Las Angeles** )

On **5-19-17** before me, **Nicole M. Crook Notary Public**
　　　Date　　　　　　　　　　　Here insert Name and Title of the Officer

personally appeared **Marguerite Consuelo DeSelms**
　　　　　　　　　　　　　　　Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature **Nicole M. Crook**
　　　　　　　Signature of Notary Public

NICOLE M. CROOK
Notary Public - California
Los Angeles County
Commission # 2125858
My Comm. Expires Jun 30, 2020

Place Notary Seal Above

---

**OPTIONAL**

*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**
Title or Type of Document: **Affidavit of Marguerite Consuela DeSelms**
Document Date: _____  Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____　　Signer's Name: _____
☐ Corporate Officer — Title(s): _____　☐ Corporate Officer — Title(s): _____
☐ Partner — ☐ Limited ☐ General　　　　☐ Partner — ☐ Limited ☐ General
☐ Individual　　☐ Attorney in Fact　　　☐ Individual　　☐ Attorney in Fact
☐ Trustee　　☐ Guardian or Conservator　☐ Trustee　　☐ Guardian or Conservator
☐ Other: _____　　　　☐ Other: _____
Signer Is Representing: _____　Signer Is Representing: _____

---

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)　Item #5907

120

# EXHIBIT 2

## AFFIDAVIT OF SECURED
## PROPERTY INTEREST

**AFFIDAVIT OF INTEREST IN PROPERTY OF Marguerite Consuelo DeSelms**

Comes now, Marguerite Consuelo DeSelms. Your Affiant, being competent to testify and being over the age of 21 years of age, after first being duly sworn according to law to tell the truth to the facts related herein states that she has firsthand knowledge of the facts stated herein and believes these facts to be true to the best of her knowledge.

1. Your Affiant, Marguerite Consuelo DeSelms, entered into an agreement to purchase specific real property, via lease purchase agreement, on or about July 31, 2006.

2. Your Affiant, Marguerite Consuelo DeSelms, notices that the address of said property is 3489 Circle Rd, San Bernardino, CA 92405.

3. Your Affiant, Marguerite Consuelo DeSelms, notices that the legal description of said property is as attached. See Exhibit A.

4. Your Affiant, Marguerite Consuelo DeSelms, had a mortgage agreement specific to said property in which the sales price was $425,000.00.

5. Your Affiant, Marguerite Consuelo DeSelms, made a down payment of $12,041.75.

6. As of August 2009, Your Affiant, Marguerite Consuelo DeSelms, made payments totaling approximately $100,138.00 (All loan servicing companies, which include first, seconds, refinanced loans, Home Equity Lines of Credit, Taxes, Insurance, etc.) to multiple alleged servicers pursuant to the alleged loan agreement specific to the purchase of the above described property, including but not limited to **COUNTRYWIDE and BANK OF AMERICA.**

7. Your Affiant, Marguerite Consuelo DeSelms, as of August 14, 2006, has nine years and 9 months, (Original loan date to present) of maintenance, upkeep and improvements including taxes and monthly payments and down payment, of said property which have an approximate value of $127,664.68. See Exhibit A.

8. Your Affiant, Marguerite Consuelo DeSelms, has a total secured interest in the above referenced property as of August 14, 2006 of approximately $ 127,664.68 (Total amount of all payments made as stated in #4 through #8 of this document).

9. To date, no party has made any offer to Your Affiant, Marguerite Consuelo DeSelms, to settle Affiant's interest in said property.

*122*

Further Affiant sayeth naught.

Date: *May 19*, 2017

Signature: *Marguerite Consuelo DeSelms*

Marguerite Consuelo DeSelms

**State of CALIFORNIA County of SAN BERNARDINO**

On _____, 2017 before me, _____, a
Notary Public duly authorized by the State of California, personally appeared _____, who
proved to me on the basis of satisfactory evidence to be the person whose name is subscribed to the
within instrument and acknowledged to me that she executed the same in her authorized capacity, and
that by her signature on the instrument the person acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of CALIFORNIA that the
foregoing paragraph is true and correct.**

*See attached*

Witness my hand and official seal.
(seal)

_____
Notary Public

173

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    CIVIL CODE § 1189

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

State of California

County of __Los Angeles__

On __5-19-17__ before me, __Nicole M. Crook Notary Public__
    Date                            Here Insert Name and Title of the Officer

personally appeared __Marguerite Consuelo DeSelms__
                                   Name(s) of Signer(s)

---

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature __Nicole M. Crook__
                Signature of Notary Public

Place Notary Seal Above

--- **OPTIONAL** ---

Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document** _Interest in Property of_
Title or Type of Document: __Affidavit of Marguerite Consuela DeSelms__
Document Date: _____ Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

| Signer's Name: _____ | Signer's Name: _____ |
|---|---|
| ☐ Corporate Officer — Title(s): _____ | ☐ Corporate Officer — Title(s): _____ |
| ☐ Partner — ☐ Limited ☐ General | ☐ Partner — ☐ Limited ☐ General |
| ☐ Individual   ☐ Attorney in Fact | ☐ Individual   ☐ Attorney in Fact |
| ☐ Trustee   ☐ Guardian or Conservator | ☐ Trustee   ☐ Guardian or Conservator |
| ☐ Other: _____ | ☐ Other: _____ |
| Signer Is Representing: _____ | Signer Is Representing: _____ |

---

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5907

124

**EXPENSES, IMPROVEMENTS AND MAINTENANCE**

(Numbers below are approximate based on averages and documented support.)

3489 Circle Rd, San Bernardino, CA 92405

**IMPROVEMENTS - From August 2006 to present**

| | |
|---|---|
| Frontline AC/Heating - repair forced air unit | $1,000.00 |
| Central Aire - install new forced air unit | $1,505.00 |
| West Coast Cooling and Heating | $59.00 |
| All City Heating and Air Cond. | $55.00 |
| Mosqueda Electric | $1,400.00 |
| Mosqueda Electric | $340.00 |
| Mosqueda Electric | $625.00 |
| Mosqueda Electric | $1,150.00 |
| Mosqueda Electric | $515.00 |
| Mosqueda Electric | $1,700.00 |
| Mosqueda Electric | $265.99 |
| Riteaway Services | $55.00 |
| American Plumbing | $50.00 |
| American Plumbing | $55.00 |
| Factory Pro Services | $55.00 |
| electrical permit issued 7-09-07 | $84.00 |
| new water heater | $1,149.00 |
| electrical permit issued 12-18-06 | $84.00 |
| Jacobs Construction - 25 ft sewer pipe replacement Nov 2013 | $1,350.00 |
| Jacobs Construction - jan 2014 snaked shower drain | $190.00 |
| AirBuddyVac air conditioner sept 2015 | $215.00 |
| Dec 2015 Victor plumbing | $80.00 |
| Jacobs Construction snake drain Jan 2015 | $110.00 |
| Al Tikal Program Loan | $3,000.00 |
| Legal Services and Consulting | $7,000.00 |
| Legal Fees | $650.00 |
| Court Call | $344.00 |
| July 2013 electrical repair | $200.00 |
| June 2013 cleaning and supplies | $268.00 |
| securitization audit | $500.00 |

**MAINTENANCE AND UPKEEP - From August 2006 to present**

| | |
|---|---|
| Electrical (Jeff ) | $200.00 |
| Ferguson Ent | $53.00 |
| Home Depot | $62.00 |
| Home Depot | $111.00 |
| Home Depot | $45.00 |
| Home Depot | $172.00 |
| chimney | $162.00 |
| Big Mike plumbing | $168.00 |
| sand floors | $2,000.00 |
| paint rooms | $500.00 |

125

**EXPENSES, IMPROVEMENTS AND MAINTENANCE**
(Numbers below are approximate based on averages and documented support.)
3489 Circle Rd, San Bernardino, CA 92405

**Payments + Taxes and Insurance (approximate)**

| | |
|---|---|
| 2008/2009 | $4,623.00 |
| 2007/2008 | $5,204.69 |
| insurance per year 931 x 4 years | $3,724.00 |
| Countrywide 2nd Heloc 1/07 to 4/2009 | $11,724.00 |
| countrywide 1st 1/07 to 7/2009 | $60,570.00 |
| Bank of America 2nd Heloc 4/2009 | $2,250.00 |
| | |
| Original Down Payments | $12,042.00 |

**TOTAL SECURITY INTEREST CLAIMS**                    **$127,664.69**

*176*

# EXHIBIT 3

## DEED OF REVOCATION

# DEED OF REVOCATION

Revocation of Deed of Trust by Grantor for Lack of execution by Beneficiary . Given the name **Marguerite** by the father, I am an immortal living soul created on his image here as one of his people, a living woman, under the seal **Marguerite DeSelms** am the lawful owner of the landed estate **MARGUERITE DESELMS** and its property and interest.

I accepted the oaths of the lawful officers and bind them to it, and in return extend my sovereign immunity to carry out this lawful order.

As TRUSTOR I sealed a Deed of Trust naming **CHICAGO TITLE COMPANY,** as
Trustee. and **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS")** as Beneficiary on August 2, 2006, witnessed by Nancy Silberberg a Notary Public. The first of the Deed of Trust and the signature page included.

Evidence of said Deed of Trust can be found in the County of San Bernardino Recorder's office. Doc. Number 2006-0552510.

Under the lawful power of the TRUSTOR (Grantor) of this modern statutory Deed of Trust I revoke such Deed of Trust due to lack of execution and or delivery acknowledgment by the beneficiary or his agent. The beneficiary shall acknowledge delivery of the Deed of Trust and until then the TRUSTOR has the power to revoke. I executed that power here, now, today.

Therefore all rents, issues, profits, rights and title that are the beneficial interest of this deed of trust are to be immediately reverted absolutely to me in the name of my landed estate **MARGUERITE DESELMS.** I further declare the Trustee(s) of said Deed of Trust free and discharge from any further responsibility of the administration and management of said deed of trust and the principle thereof.

My right to revoke said Deed of Trust is now a matter of public record as my freewill act and deed, witness under my hand and seal and lawfully acknowledge and attested too with full faith and credit guaranteed by Article 4 Section 1 of the united States of America Constitution.

Marguerite DeSelms

128

**CALIFORNIA ALL-PURPOSE ACKNOWLEDGMENT**                    **CIVIL CODE § 1189**

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California    )
County of **Los Angeles**    )

On **5-19-17** before me, **Nicole M. Crook Notary Public**
            Date                           Here Insert Name and Title of the Officer

personally appeared **Marguerite Consuela DeSelms**
                              Name(s) of Signer(s)

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature **Nicole M. Crook**
                    Signature of Notary Public

Place Notary Seal Above

─────────────── OPTIONAL ───────────────
Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.

**Description of Attached Document**
Title or Type of Document: **Deed of Revocation**
Document Date: _____  Number of Pages: _____
Signer(s) Other Than Named Above: _____

**Capacity(ies) Claimed by Signer(s)**

Signer's Name: _____      Signer's Name: _____
☐ Corporate Officer -- Title(s): _____    ☐ Corporate Officer -- Title(s): _____
☐ Partner — ☐ Limited ☐ General          ☐ Partner — ☐ Limited ☐ General
☐ Individual  ☐ Attorney in Fact          ☐ Individual  ☐ Attorney in Fact
☐ Trustee  ☐ Guardian or Conservator      ☐ Trustee  ☐ Guardian or Conservator
☐ Other: _____         ☐ Other: _____
Signer Is Representing: _____       Signer Is Representing: _____

©2015 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)    Item #5907

129

Branch :IRV,User :AD08                    Comment:                                    Station Id :CNV6

Recording Requested By,
Chicago Title

Recording Requested By:
BONDCORP REALTY SERVICES, INC.



Recorded in Official Records, County of San Bernardino
LARRY WALKER
Auditor/Controller – Recorder
697 Chicago Title Co. – Misc.

Doc#   2006-0552510   Titles: 1   Pages: 23

And After Recording Return To:
BONDCORP REALTY SERVICES, INC.
1200 QUAIL ST. #170
NEWPORT BEACH, CALIFORNIA 92660
Loan Number: QB129887081

(008585300-539)        Space Above This Line For Recording Data

# DEED OF TRUST

**MIN:**  1001204-0129887081-0

**DEFINITIONS**

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21.  Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated   JULY 31, 2006          , together with all Riders to this document.

(B) "Borrower" is  MARGUERITE DESELMS, AN UNMARRIED WOMAN

Borrower is the trustor under this Security Instrument.

(C) "Lender" is  BONDCORP REALTY SERVICES, INC.

Lender is a  CALIFORNIA CORPORATION                                organized
and existing under the laws of  CALIFORNIA
Lender's address is   1200 QUAIL ST. #170, NEWPORT BEACH, CALIFORNIA
92660

(D) "Trustee" is  CHICAGO TITLE COMPANY
16969 VON KARMAN, IRVINE, CALIFORNIA 92606

(E) "MERS" is Mortgage Electronic Registration Systems, Inc.  MERS is a separate corporation that is acting solely as a nominee for Lender and Lender's successors and assigns.  MERS is the beneficiary under this Security Instrument.  MERS is organized and existing under the laws of Delaware, and has an address and telephone number of P.O. Box 2026, Flint, MI 48501-2026, tel. (888) 679-MERS.

(F) "Note" means the promissory note signed by Borrower and dated   JULY 31, 2006
The Note states that Borrower owes Lender  THREE HUNDRED FORTY THOUSAND AND
00/100                                 Dollars (U.S. $ 340,000.00          ) plus interest.

Borrower Initials:

CALIFORNIA–Single Family–Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS          Greatdocs.™ 800-968-5775
Form 3005 01/01                                     Page 1 of 14                          www.docmagic.com

130

Branch :IRV,User :AD08                    Comment:                              Station Id :CNV6

Borrower has promised to pay this debt in regular Periodic Payments and to pay the debt in full not later than
**SEPTEMBER 1, 2036**
(G) "Property" means the property that is described below under the heading "Transfer of Rights in the Property."
(H) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under
the Note, and all sums due under this Security Instrument, plus interest.
(I) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are
to be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☒ Adjustable Rate Rider | ☐ Planned Unit Development Rider | |
| ☐ Balloon Rider | ☐ Biweekly Payment Rider | |
| ☐ 1-4 Family Rider | ☐ Second Home Rider | |
| ☐ Condominium Rider | ☒ Other(s) [specify] | |

INTEREST ONLY RIDER, PREPAYMENT RIDER

(J) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
(K) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other charges
that are imposed on Borrower or the Property by a condominium association, homeowners association or similar
organization.
(L) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by check, draft,
or similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or
magnetic tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term
includes, but is not limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by
telephone, wire transfers, and automated clearinghouse transfers.
(M) "Escrow Items" means those items that are described in Section 3.
(N) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid by any
third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or
destruction of, the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in
lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
(O) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
(P) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the Note,
plus (ii) any amounts under Section 3 of this Security Instrument.
(Q) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. §2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument,
"RESPA" refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan"
even if the Loan does not qualify as a "federally related mortgage loan" under RESPA.
(R) "Successor in Interest of Borrower" means any party that has taken title to the Property, whether or not that
party has assumed Borrower's obligation under the Note and/or this Security Instrument.

**TRANSFER OF RIGHTS IN THE PROPERTY**

The beneficiary of this Security Instrument is MERS (solely as nominee for Lender and Lender's successors and
assigns) and the successors and assigns of MERS. This Security Instrument secures to Lender: (i) the repayment of
the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's

Borrower Initials: _____   _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                                    Page 2 of 14

131

Branch :IRV,User :AD08                    Comment:                              Station Id :CNV6

covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the
COUNTY              of              SAN BERNARDINO
[Type of Recording Jurisdiction]        [Name of Recording Jurisdiction]
SEE LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF AS EXHIBIT "A".
A.P.N.: 0151-161-14-0-000

which currently has the address of   3489 CIRCLE ROAD
[Street]

SAN BERNARDINO          , California    92405    ("Property Address"):
[City]                                  [Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property." Borrower understands and agrees that MERS holds only legal title to the interests granted by Borrower in this Security Instrument, but, if necessary to comply with law or custom, MERS (as nominee for Lender and Lender's successors and assigns) has the right: to exercise any or all of those interests, including, but not limited to, the right to foreclose and sell the Property; and to take any action required of Lender including, but not limited to, releasing and canceling this Security Instrument.

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not

Borrower Initials: _____ _____ _____ _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                              Page 3 of 14

132

Branch :IRV,User :AD06                     Comment:                                    Station Id :CNV6

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Marguerite A. DeSilva_ _____ (Seal)          _____ (Seal)
MARGUERITE DESILVA          -Borrower                                                   -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                                   -Borrower

_____ (Seal)          _____ (Seal)
                             -Borrower                                                   -Borrower

Witness:                                       Witness:

_____                 _____

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT : MERS        DocMagic eForms 800-649-1362
Form 3005 01/01                               Page 13 of 14                         www.docmagic.com

SAN BERNARDINO,CA                     Page 13 of 23                     Printed on 11/13/2012 11:38:45 AM
Document: TD 2006.552510

133

Branch :IRV.User :AD08                    Comment:                                        Station Id :CNV6

State of California                    )
                                       ) ss.
County of   SAN BERNARDINO             )

       On AUGUST  2, 2006              before me,   NANCY B. SILBERBERG, NOTARY PUBLIC

personally appeared   MARGUERITE DESELMS

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.



                              NOTARY SIGNATURE

                              NANCY B. SILBERBERG
                              (Typed Name of Notary)

       NOTARY SEAL

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT - MERS
Form 3005 01/01                              Page 14 of 14                    GreatDocs ®Version 800-649-1362
                                                                             www.docmagic.com

134

Branch :1RV.User :AD08                    Comment:                    Station Id :CNV6

**GOVERNMENT CODE 27361.7**

**I CERTIFY UNDER PENALTY OF PERJURY THAT THE NOTARY SEAL ON THE DOCUMENT TO WHICH THIS STATEMENT IS ATTACHED READS AS FOLLOWS:**

NAME OF NOTARY: _Nancy B. Silberberg_

DATE COMMISSION EXPIRES: _60-21, 2009_

COMMISSION NUMBER: _1547100_

VENDOR NUMBER: _NN+1_

COUNTY WHERE BOND IS FILED: _San Bernardino_

PLACE OF EXECUTION: IRVINE, CA

DATE: _8/7/06_

BY: _____

CHICAGO TITLE COMPANY

135

# EXHIBIT 4

## CERTIFICATE OF ACKNOWLEDGEMENT

136

## CERTIFICATE OF ACKNOWLEDGEMENT

I, **Marguerite**, living woman. of the family DeSelms, made in the Creator's image, with indefeasible title to my land and lawful owner of the landed Estate known as MARGUERITE DESELMS and its real property and interest under the seal: Marguerite DeSelms and any or all derivations thereof, am recorded as the grantee on the Grant Deed for the real property described on the attached certified copy of said deed.

**LET IT BE KNOWN BY THESE PRESENTS**, that it is my freewill act and deed to execute this affidavit of acknowledgment for my acceptance of the deed, and lawful ownership of the property under the terms of the deed as my claim of unalienable right. I command that the record on file in the office of register of deeds be updated to show my acceptance of the deed, as lawful owner of the real estate.

All other real property and interest issued for this real estate and its gain is to be immediately returned to me.

**Further let it be known by these presents** that I accept the oaths of all public officers and bind them to such, as well as bestow my sovereign immunity on them while administering my lawful orders. This public record under the seal of a competent court is guaranteed full faith and credit per Article 4 Section 1 of your Constitution. Any officer of the public who does not immediately carry out these lawful orders acknowledges warring with the constitution and committing treason. So let it be written. so let it be done.

I, **Marguerite DeSelms, on this** _____ **17th** **day of May, 2017, do hereby swear under oath, attest and affirm** I have prepared this document for the sole purposes as set forth herein. and not for any other purpose and not to mislead. obstruct. obscure or impede the rightful due processes as provided by law. public codes and legal statutes. As the below signatory claimant I declare under penalty of perjury that this instrument is not recorded for the purpose of slandering title to real property and is filed with good faith and clean hands to reserve my interests as described, and as signatory claimant hereby enter this into the public record based on informed firsthand knowledge and stating that the herein contained information is true, correct. complete and certain and claimant will testify to the veracity thereof.

**Witness my Hand and Seal as my freewill act and deed:**

Authorized By: *Marguerite Consuelo DeSelms*   SEAL
Marguerite Consuelo DeSelms, Executor

Date: 5-19-17

137



# MERCHANTS BONDING COMPANY™

MERCHANTS BONDING COMPANY (MUTUAL)   P.O. BOX 14498, DES MOINES, IOWA 50306-3498
PHONE: (800) 876-6827  FAX: (800) 833-1211

**NOTARY PUBLIC BOND**                                   Bond No. _____ 41775862N
KNOW ALL PERSONS BY THESE PRESENTS:                     Premium _____ $38.00

That we _____ NICOLE CROOK _____, as Principal and MERCHANTS
BONDING COMPANY (MUTUAL), a corporation duly licensed to do business in the State of California, as Surety, are
held and firmly bound unto the State of California, in the sum of Fifteen Thousand ($15,000) Dollars, lawful money of
the United States of America, to be paid to the said State of California, or its assigns, for which payment, well and truly
to be made, we bind ourselves and our legal representatives, jointly and severally, firmly by these presents.

THE CONDITION OF THE ABOVE OBLIGATIONS IS SUCH, That whereas, the Principal was on the __1ST__ day of
____ JULY ____, 20 16 ____ duly appointed a Notary Public in the State of California for the term of four years
from the date of his/her commission.

NOW THEREFORE, if the Principal shall well, truly and faithfully perform all official duties required of him/her by law,
and all such additional duties as may hereafter be imposed on him/her as such officer by any law of the State of
California, then the above obligation to be void, otherwise to remain in full force and effect.

Any proceeding under this bond may be instituted in any court of competent jurisdiction in the State of California.
Signed and dated this __1ST__ day of ____ JULY ____ 2016

MERCHANTS BONDING COMPANY (MUTUAL)

By_____          By_____
Principal NICOLE CROOK                   Attorney-in-Fact MARIA WASHINGTON
(Executed under penalty of perjury as provided in C.C.P. 995.630a)

---

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the
document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

---

STATE OF  California
County of  Los Angeles
On ____ JULY 1, 2016 ____, before me, ____ NAOMI FENIG ____ Notary Public, personally appeared
____ MARIA WASHINGTON ____, who proved to me on the basis of satisfactory evidence to be the
person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they
executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument
the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.  I certify under
PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.
WITNESS my hand and official seal.

Signature_____
Notary Public  NAOMI FENIG

NEO 0601-0001 CA (8/15)                                  Do not stamp seal below this line.

139



**MERCHANTS**
**BONDING COMPANY™**

MERCHANTS BONDING COMPANY (MUTUAL)   P.O. BOX 14498   DES MOINES  IOWA 50306-3498
PHONE (800) 876-6827   FAX (800) 833-1211

## NOTARY PUBLIC ERRORS AND OMISSIONS POLICY

Effective Date: 12:01 AM JULY 1, 2016         Policy No.   41775863E

Expiration Date: 12:01 AM JULY 1, 2017         Premium:    $33.00

COVERAGE: MERCHANTS BONDING COMPANY (MUTUAL) ("the Company") will pay on behalf of _____
NICOLE CROOK _____ of _____ SAN PEDRO, CA _____
("the Insured"),  all sums, subject to the Limit of Liability stated below, which the Insured shall become obligated to
pay by reason of liability for breach of duty while acting as a duly commissioned and sworn Notary Public, claim for
which is made against the Insured by reason of any negligent act, error or omission, committed or alleged to have
been committed by the Insured, arising out of the performance of notarial service for others in the Insured's capacity
as a duly commissioned and sworn Notary Public.  The Company will also pay on behalf of the Insured, subject to the
Limit of Liability stated below, costs and expenses incurred in investigating, defending or settling the Insured's liability
arising from any negligent act, error or omission, committed or alleged to have been committed by the Insured, arising
out of the performance of notarial service for others in the Insured's capacity as a duly commissioned and sworn
Notary Public.

POLICY PERIOD: This policy applies only to negligent acts, errors or omissions which occur during the policy
period and then only if claim, suit or other action arising therefrom is commenced within the applicable statute of
limitations pertaining to the Insured. The Policy Period commences on the Effective Date hereof and terminates upon
the Expiration Date hereof

LIMIT OF LIABILITY: The liability of the Company shall not exceed in the aggregate for all claims, costs and
expenses under this policy the amount of TWENTY FIVE THOUSAND DOLLARS _____ ( $25,000.00 _____ ) Dollars.
(NOT VALID IF FILLED IN FOR MORE THAN $100,000)
**THIS LIMIT OF LIABILITY INCLUDES COSTS AND EXPENSES INCURRED IN INVESTIGATING, DEFENDING OR
SETTLING LIABILITY. ONCE THE LIMIT OF LIABILITY STATED ABOVE HAS BEEN PAID, WHETHER BY SETTLEMENT
OF A CLAIM OR CLAIMS, OR BY PAYMENT OF COSTS AND EXPENSES, THE COMPANY IS RELIEVED OF ANY
FURTHER DUTY TO DEFEND OR INDEMNIFY THE INSURED UNDER THIS POLICY.**

SETTLEMENT:  The Company, in the Insured's name and behalf, shall have the exclusive right to make any
settlement of any claim, suit, or other action, as the Company deems expedient.

CONDITIONS PRECEDENT: As a condition precedent to the right of indemnification or defense hereunder, the
Insured shall mail or deliver to the Company within ten (10) days after notice or knowledge of a claim or possible
claim against the Insured copies of any written notice thereof and a complete description of the facts and
circumstances alleged to give rise to such claim  Bankruptcy or insolvency of the Insured shall not release the
Company or its liability hereunder.

EXCLUSIONS: Coverage under this policy as described in the COVERAGE section of the policy above does not
apply to any acts of or allegations of (i) dishonest, fraudulent, criminal, libelous, slanderous or malicious act or
omission of the Insured, (ii) willful or intentional disregard of the law, (iii) bodily injury to, or sickness, disease or death
of any person, including but not limited to, emotional or mental distress and related conditions; (iv) injury to or
destruction of any tangible property, including the loss of use thereof; (v) fines or penalties imposed by law on
the Insured; or (vi) punitive, treble, exemplary or similarly categorized damages, including fines and penalties.

NEO 0771 0001 CA (2/15)

*140*

CO-INSURANCE  If the Insured has other insurance against a loss covered by this policy, the Company shall not be liable under this policy for a greater proportion of such loss than the limit of liability stated in this policy bears to the limit of liability of all other insurance against such loss.

SUBROGATION  In the event of any payment for any loss under this insurance, the Company shall be subrogated to all of the insured's rights of recovery thereafter against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights to the Company. The Insured shall do nothing after loss to prejudice such rights.

CANCELLATION  This policy may be cancelled by the Insured by surrender hereof to the Company or any of its authorized agents or by mailing to the Company written notice stating when thereafter the cancellation shall be effective. If this policy has been in effect for less than 60 days, we may cancel this policy for nonpayment of premium or for fraud or material misrepresentation in obtaining the policy or in pursuing a claim by giving 10 days advance written notice, or we may cancel for any other reason by giving 30 days advance written notice. If this policy has been in effect for 60 days or more, we may cancel only for one or more of the following reasons:  (a) nonpayment of premium, (b) fraud or material misrepresentation in obtaining the policy or in pursuing a claim; (c) conviction under a state or federal law for an act that materially increases any of the risks insured against; (d) failure by the Insured to implement reasonable loss control requirements, agreed to as a condition of policy issuance; (e) if the Commissioner of Insurance determines that loss of or changes in the Company's reinsurance covering all or part of the risk would threaten the Company's financial integrity or solvency; (f) if the Commissioner of Insurance determines that the continuation of the policy would place the Company in violation of California law or the laws of the state where the Company is domiciled; (g) if the Commissioner of Insurance determines that the continuation of the policy would threaten the Company's solvency; or (h) an increased risk or changed risk, unless the added, increased, or changed risk is included in the policy. If this policy is cancelled for reason (a) and (b) above, we will provide written notice to the Insured at least 10 days before the effective date of cancellation  If this policy is cancelled for reasons (c) through (h) above, we will provide written notice to the Insured at least 30 days before the effective date of cancellation. The reason for cancellation shall be stated on the notice.

The mailing of notice as aforesaid shall be sufficient proof of notice.  Delivery of such written notice either by the Insured or by the Company shall be equivalent to mailing. The time of surrender or the effective date and hour of cancellation stated in the notice shall become the end of the policy period. If the insured cancels, the premium shall be fully earned. If the Company cancels, return premium shall be computed pro rata.

EFFECTIVE DATE: 12:01 AM  JULY 1, 2016                EXPIRATION DATE  12:01 AM JULY 1, 2017

Attested by                                                                    MERCHANTS BONDING COMPANY (Mutual)

_William Warner Jr._                                      By _Larry Taylor_
William Warner Jr , Secretary                                              Larry Taylor, President

NEO 0771-0001 CA (2/15)

141

EXHIBIT 16, NOTICE OF TRUSTEE'S SALE - RECORDED ON MARCH 9TH, 2018, RECORDED IN THE OFFICIAL RECORDS OF SAN BERNARDINO COUNTY, 2018-0085594

142



**FirstAm**     **Recorded Document**

The Recorded Document images are displayed in the subsequent pages for the following request:

State:            CA
County:           San Bernardino
Document Type:    Document - Year.DocID
Year:             2018
DocID:            0095594

**Limitation of Liability for Informational Report**

**IMPORTANT – READ CAREFULLY: THIS REPORT IS NOT AN INSURED PRODUCT OR SERVICE OR A REPRESENTATION OF THE CONDITION OF TITLE TO REAL PROPERTY. IT IS NOT AN ABSTRACT, LEGAL OPINION, OPINION OF TITLE, TITLE INSURANCE COMMITMENT OR PRELIMINARY REPORT, OR ANY FORM OF TITLE INSURANCE OR GUARANTY. THIS REPORT IS ISSUED EXCLUSIVELY FOR THE BENEFIT OF THE APPLICANT THEREFOR, AND MAY NOT BE USED OR RELIED UPON BY ANY OTHER PERSON. THIS REPORT MAY NOT BE REPRODUCED IN ANY MANNER WITHOUT FIRST AMERICAN'S PRIOR WRITTEN CONSENT. FIRST AMERICAN DOES NOT REPRESENT OR WARRANT THAT THE INFORMATION HEREIN IS COMPLETE OR FREE FROM ERROR, AND THE INFORMATION HEREIN IS PROVIDED WITHOUT ANY WARRANTIES OF ANY KIND, AS-IS, AND WITH ALL FAULTS. AS A MATERIAL PART OF THE CONSIDERATION GIVEN IN EXCHANGE FOR THE ISSUANCE OF THIS REPORT, RECIPIENT AGREES THAT FIRST AMERICAN'S SOLE LIABILITY FOR ANY LOSS OR DAMAGE CAUSED BY AN ERROR OR OMISSION DUE TO INACCURATE INFORMATION OR NEGLIGENCE IN PREPARING THIS REPORT SHALL BE LIMITED TO THE FEE CHARGED FOR THE REPORT. RECIPIENT ACCEPTS THIS REPORT WITH THIS LIMITATION AND AGREES THAT FIRST AMERICAN WOULD NOT HAVE ISSUED THIS REPORT BUT FOR THE LIMITATION OF LIABILITY DESCRIBED ABOVE. FIRST AMERICAN MAKES NO REPRESENTATION OR WARRANTY AS TO THE LEGALITY OR PROPRIETY OF RECIPIENT'S USE OF THE INFORMATION HEREIN.**

Recorded Document                                                                    03/26/2018
©2006-2018 First American Financial Corporation and/or its affiliates. All rights reserved.





RECORDING REQUESTED BY:

STEWART TITLE OF CALIFORNIA, INC., A
CALIFORNIA CORPORATION

WHEN RECORDED MAIL TO

Trustee Corps
17100 Gillette Ave
Irvine, CA 92614

Electronically Recorded in Official Records, County of San Bernardino   3/06/2018
02:55 PM
PV

**BOB DUTTON**
ASSESSOR · RECORDER · CLERK
43G  Stewart Title Guaranty Company

Doc# 2018-0085594   Titles 1   Pages 3

| | |
|---|---|
| Fees | 30.00 |
| Taxes | .00 |
| CA SB2 Fee | 75.00 |
| Others | .00 |
| Paid | 105.00 |

APN: 0151-161-14-0-000        TS No: CA08001415-17.1        TO No: 17-0008514-01

## NOTICE OF TRUSTEE'S SALE

NOTE: THERE IS A SUMMARY OF THE INFORMATION IN THIS DOCUMENT ATTACHED
注：本文件包含一个信息摘要
참고사항: 본 첨부 문서에 정보 요약서가 있습니다
NOTA: SE ADJUNTA UN RESUMEN DE LA INFORMACIÓN DE ESTE DOCUMENTO
TALA: MAYROONG BUOD NG IMPORMASYON SA DOKUMENTONG ITO NA NAKALAKIP
LƯU Ý: KÈM THEO ĐÂY LÀ BẢN TRÌNH BÀY TÓM LƯỢC VỀ THÔNG TIN TRONG TÀI LIỆU NÀY
(The above statement is made pursuant to CA Civil Code Section 2923.3(d)(1). The Summary will be provided to Trustor(s) and/or vested owner(s) only, pursuant to CA Civil Code Section 2923.3(d)(2).)

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED July 31, 2006.  UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE.  IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDINGS AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

On April 12, 2018 at 02:00 PM, on the Southside of the main entrance to the Chino Public Library, 13180 Central Avenue, Chino, CA 91710, MTC Financial Inc. dba Trustee Corps, as the duly Appointed Trustee, under and pursuant to the power of sale contained in that certain Deed of Trust recorded on August 14, 2006 as Instrument No. 2006-0552511, of official records in the Office of the Recorder of San Bernardino County, California, executed by MARGUERITE DESELMS, AN UNMARRIED WOMAN, as Trustor(s), in favor of MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. as nominee for BONDCORP REALTY SERVICES, INC., A CALIFORNIA CORPORATION as Beneficiary, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, in lawful money of the United States, all payable at the time of sale, that certain property situated in said County, California describing the land therein as: AS MORE FULLY DESCRIBED IN SAID DEED OF TRUST

The property heretofore described is being sold "as is".  The street address and other common designation, if any, of the real property described above is purported to be: 3469 CIRCLE ROAD, SAN BERNARDINO, CA 92405

144

The undersigned Trustee disclaims any liability for any incorrectness of the street address and other common designation, if any, shown herein.

Said sale will be made without covenant or warranty, express or implied, regarding title, possession, or encumbrances, to pay the remaining principal sum of the Note(s) secured by said Deed of Trust, with interest thereon, as provided in said Note(s), advances if any, under the terms of the Deed of Trust, estimated fees, charges and expenses of the Trustee and of the trusts created by said Deed of Trust.

The total amount of the unpaid balance of the obligations secured by the property to be sold and reasonable estimated costs, expenses and advances at the time of the initial publication of this Notice of Trustee's Sale is estimated to be $131,397.67 (Estimated). However, prepayment premiums, accrued interest and advances will increase this figure prior to sale. Beneficiary's bid at said sale may include all or part of said amount. In addition to cash, the Trustee will accept a cashier's check drawn on a state or national bank, a check drawn by a state or federal credit union or a check drawn by a state or federal savings and loan association, savings association or savings bank specified in Section 5102 of the California Financial Code and authorized to do business in California, or other such funds as may be acceptable to the Trustee. In the event tender other than cash is accepted, the Trustee may withhold the issuance of the Trustee's Deed Upon Sale until funds become available to the payee or endorsee as a matter of right. The property offered for sale excludes all funds held on account by the property receiver, if applicable.

**If the Trustee is unable to convey title for any reason, the successful bidder's sole and exclusive remedy shall be the return of monies paid to the Trustee and the successful bidder shall have no further recourse.**

## Notice to Potential Bidders

If you are considering bidding on this property lien, you should understand that there are risks involved in bidding at a Trustee auction. You will be bidding on a lien, not on the property itself. Placing the highest bid at a Trustee auction does not automatically entitle you to free and clear ownership of the property. You should also be aware that the lien being auctioned off may be a junior lien. If you are the highest bidder at the auction, you are or may be responsible for paying off all liens senior to the lien being auctioned off, before you can receive clear title to the property. You are encouraged to investigate the existence, priority, and size of outstanding liens that may exist on this property by contacting the county recorder's office or a title insurance company, either of which may charge you a fee for this information. If you consult either of these resources, you should be aware that the same Lender may hold more than one mortgage or Deed of Trust on the property

TS No: CA08001415-17-1

145

## Notice to Property Owner

The sale date shown on this Notice of Sale may be postponed one or more times by the Mortgagee, Beneficiary, Trustee, or a court, pursuant to Section 2924g of the California Civil Code. The law requires that information about Trustee Sale postponements be made available to you and to the public, as a courtesy to those not present at the sale.  If you wish to learn whether your sale date has been postponed, and, if applicable, the rescheduled time and date for the sale of this property, you may call In Source Logic at 702-659-7766 for information regarding the Trustee's Sale or visit the Internet Web site address listed below for information regarding the sale of this property, using the file number assigned to this case, CA08001415-17-1.  Information about postponements that are very short in duration or that occur close in time to the scheduled sale may not immediately be reflected in the telephone information or on the Internet Web site.  The best way to verify postponement information is to attend the scheduled sale.

Date: March 2, 2018

MTC Financial Inc. dba Trustee Corps
TS No. CA08001415-17-1
17100 Gillette Ave
Irvine, CA 92614
Phone: 949-252-8300
TDD: 866-660-4288

_____

Myron Ravelo, Authorized Signatory

SALE INFORMATION CAN BE OBTAINED ON LINE AT www.insourcelogic.com
FOR AUTOMATED SALES INFORMATION PLEASE CALL:
In Source Logic AT 702-659-7766

Trustee Corps may be acting as a debt collector attempting to collect a debt.
Any information obtained may be used for that purpose.

To the extent your original obligation was discharged, or is subject to an automatic stay of bankruptcy under Title 11 of the United States Code, this notice is for compliance and/or informational purposes only and does not constitute an attempt to collect a debt or to impose personal liability for such obligation.  However, a secured party retains rights under its security instrument, including the right to foreclose its lien.

TS No: CA08001415-17-1

146

**EXHIBIT 17 – 8.5 BILLION DOLLAR SETTLEMENT AGREEMENT**

EX-99.2 3 dex992.htm SETTLEMENT AGREEMENT

Exhibit 99.2

**EXECUTION COPY**

## SETTLEMENT AGREEMENT

This Settlement Agreement is entered into by and among (i) The Bank of New York Mellon (f/k/a The Bank of New York) in its capacity as trustee or indenture trustee of certain mortgage-securitization trusts identified herein ("BNY Mellon" or the "Trustee"), and (ii) Bank of America Corporation ("BAC"), and BAC Home Loans Servicing, LP ("BAC HLS") (collectively, "Bank of America") and Countrywide Financial Corporation ("CFC") and Countrywide Home Loans, Inc. ("CHL") (collectively, "Countrywide").

WHEREAS, BNY Mellon is the trustee or indenture trustee for the trusts corresponding to the five hundred and thirty (530) residential mortgage-backed securitizations listed on Exhibit A hereto (the "Covered Trusts");

WHEREAS, Countrywide sold Mortgage Loans, which served as collateral for the Covered Trusts;

WHEREAS, the Trustee, CHL, and/or BAC HLS are parties to the Pooling and Servicing Agreements and in some cases Sale and Servicing Agreements and Indentures governing the Covered Trusts (as amended, modified, and supplemented from time-to-time, the "Governing Agreements"), and CHL, Countrywide Home Loans Servicing, LP, and/or BAC HLS has acted as Master Servicer for the Covered Trusts ("Master Servicer");

WHEREAS, certain significant holders of certificates or notes representing interests in certain of the Covered Trusts and investment managers of accounts holding such certificates or notes (the "Institutional Investors," as defined in more detail in the Institutional Investor Agreement) have entered into a separate Institutional Investor Agreement with the Trustee, Bank of America and Countrywide, the due execution of which is a condition to the effectiveness of this Settlement Agreement;

WHEREAS, allegations have been made of breaches of representations and warranties contained in the Governing Agreements with respect to the Covered Trusts (including alleged failure to comply with underwriting guidelines (including limitations on underwriting exceptions), to comply with required loan-to-value and debt-to-income ratios, to ensure appropriate appraisals of mortgaged properties, and to verify appropriate owner-occupancy

148

https://www.sec.gov/Archives/edgar/data/70858000119312511170452/...

---

status) and of the repurchase provisions contained in the Governing Agreements;

WHEREAS, the Institutional Investors have sought to provide notice pursuant to certain of the Governing Agreements claiming failure by Bank of America and Countrywide, and affiliates, divisions, and subsidiaries thereof, to perform thereunder, and have alleged Mortgage Loan servicing breaches and documentation defects against Bank of America and Countrywide, and affiliates, divisions, and subsidiaries thereof, and Bank of America and Countrywide dispute such allegations and waive no rights, and preserve all of their defenses, with respect to such allegations and putative notices;

WHEREAS, the Institutional Investors have asserted that Bank of America is liable for the obligations of Countrywide with respect to the Covered Trusts, and Bank of America disputes that contention and waives no rights, and preserves all of its defenses, with respect to such contention;

WHEREAS, the Institutional Investors formed a steering committee (comprised of BlackRock Financial Management, Inc., Pacific Investment Management Company LLC, certain ING companies, Metropolitan Life Insurance Company, and the Federal Home Loan Mortgage Corporation ("Freddie Mac"));

WHEREAS, the Trustee, Bank of America, Countrywide, and the Institutional Investors have engaged in arm's-length settlement negotiations that included the exchange of confidential materials;

WHEREAS, in the settlement negotiations, the Trustee received and evaluated information presented by Bank of America, Countrywide, and the Institutional Investors related to potential liabilities and defenses, and alleged damages, and has determined, in the exercise of its discretion as Trustee, that entry into this Settlement Agreement and the settlement contemplated thereby (the "Settlement") is within the Trustee's powers under the Governing Agreements and applicable law and in the best interests of and advantageous to the Covered Trusts; and

WHEREAS, as set forth below, the Settlement is subject to judicial approval, and, toward that end, the Trustee will commence in the Supreme Court of the State of New York, County of

- 2 -

---

New York (the "Settlement Court"), in its capacity as trustee or indenture trustee under the Governing Agreements, a proceeding under Article 77 of the New York Civil Practice Law and Rules (the "Article 77 Proceeding") and file a verified petition that seeks a final order and judgment that conforms in all material respects to the form attached as Exhibit B hereto (the "Final Order and Judgment").

NOW, THEREFORE, THE PARTIES AGREE AS FOLLOWS:

1. **Definitions.** Any capitalized terms not defined herein shall have the definition given to them in the Governing Agreements. As used in this Settlement Agreement, in addition to the terms otherwise defined herein or in the Governing Agreements, the following terms shall have the meanings set forth below (the definitions to be applicable to both the singular and the plural forms of each term defined if both forms of such term are used in this Settlement Agreement):

(a) "Approval Date" shall mean the date upon which Final Court Approval, as defined in Paragraph 2, is obtained;

(b) "Bank of America Parties" shall mean BAC and any of its past, present, or future, direct or indirect affiliates, parents, divisions, or subsidiaries (including BAC HLS and Bank of America, N.A.), and each of their respective past, present, or future, direct or indirect affiliates, parents, divisions, subsidiaries, general partners, limited partners, shareholders, officers, directors, trustees, members, employees, agents, servants, attorneys, accountants, insurers, co-insurers, and re-insurers, and the predecessors, successors, heirs, and assigns of each of the foregoing;

(c) "BNY Mellon Parties" shall mean BNY Mellon and any of its past, present, or future, direct or indirect affiliates, parents, divisions, or subsidiaries, on behalf of themselves and each of their respective past, present, or future, direct or indirect affiliates, parents, divisions, subsidiaries, general partners, limited partners, officers, directors, trustees, co-trustees, members, employees, agents, servants, attorneys, accountants, insurers, co-insurers, and re-insurers, and the predecessors, successors, heirs, and assigns of the foregoing;

(d) "Code" means the Internal Revenue Code of 1986, as amended;

- 3 -

149

EXECUTION COPY

(e) "Countrywide Parties" shall mean CFC and any of its past, present, or future, direct or indirect affiliates, parents, divisions, or subsidiaries (including CHL, Countrywide Capital Markets, Countrywide Bank FSB, Countrywide Securities Corporation, Countrywide Home Loans Servicing, LP (now known as BAC Home Loans Servicing, LP), CWMBS, Inc., CWABS, Inc., CWALT, Inc., CWHEQ, Inc., Park Granada LLC, Park Monaco Inc., Countrywide LFT LLC, and Park Sienna LLC), and each of their respective past, present, or future, direct or indirect affiliates, parents, divisions, subsidiaries, general partners, limited partners, shareholders, officers, directors, trustees, members, employees, agents, servants, attorneys, accountants, insurers, co-insurers, and re-insurers, and the predecessors, successors, heirs, and assigns of the foregoing;

(f) "Governmental Authority" shall mean any United States or foreign government, any state or other political subdivision thereof, any entity exercising executive, legislative, judicial, regulatory, or administrative functions of or pertaining to the foregoing, or any other authority, agency, department, board, commission, or instrumentality of the United States, any State of the United States or any political subdivision thereof or any foreign jurisdiction, and any court, tribunal, or arbitrator(s) of competent jurisdiction, and any United States or foreign governmental or non-governmental self-regulatory organization, agency, or authority (including the New York Stock Exchange, Nasdaq, and the Financial Industry Regulatory Authority);

(g) "Investors" shall mean all certificateholders and noteholders in the Covered Trusts, and their successors in interest, assigns, and transferees;

(h) "Law" shall mean collectively (whether now or hereafter enacted, promulgated, entered into, or agreed to) all laws (including common law), statutes, ordinances, codes, rules, regulations, directives, decrees, and orders, whether by consent or otherwise, of Governmental Authorities, or publicly-disclosed agreements between any Party and any Governmental Authority;

(i) "Losses" shall mean any and all claims, suits, liabilities (including strict liabilities), actions, proceedings, obligations, debts, damages, losses, costs, expenses, fines, penalties, assessments, demands, charges, fees, judgments, awards, disbursements and amounts paid in settlement, punitive damages, foreseeable and unforeseeable damages, incidental or

- 4 -

EXECUTION COPY

consequential damages, of whatever kind or nature (including attorneys' fees and other costs of defense and disbursements);

(j) "Party" shall refer individually to each of the Trustee, Bank of America, and Countrywide, which shall collectively be the "Parties";

(k) "Person" shall mean any individual, corporation, company, partnership, limited liability company, joint venture, association, trust, or other entity, including a Governmental Authority;

(l) "REMIC" shall mean a "real estate mortgage investment conduit" within the meaning of Section 860D of the Code;

(m) "REMIC Provisions" shall mean the provisions of United States federal income tax law relating to real estate mortgage investment conduits, which appear at Section 860A through Section 860G of the Code, and related provisions and regulations promulgated thereunder, as the foregoing may be in effect from time to time;

(n) "Settlement Agreement" shall mean this settlement agreement, together with all of its Exhibits; and

(o) "Signing Date" shall mean the date on which this Settlement Agreement is first executed by all of the Parties. The Signing Date may also be referred to herein as the date of this Settlement Agreement.

2. **Final Court Approval.**

(a) **Requirement of Final Court Approval.** Where provided for herein, the terms of this Settlement Agreement are subject to and conditioned upon "Final Court Approval." Final Court Approval shall have occurred only after (i) the Article 77 Proceeding is commenced, (ii) notice of the Settlement and the matters is provided to the extent reasonably practicable to the Investors in a form and by a method approved by the Settlement Court, (iii) the Investors are given an opportunity to object and to make their views known to the Settlement Court in such manner as the Settlement Court may direct, (iv) the Trustee and any other supporter of the Settlement are given the opportunity to make their views known to the Settlement Court in such

- 5 -


150

EXECUTION COPY

manner as the Settlement Court may direct, (v) the Settlement Court enters in the Article 77 Proceeding (including in a subsequent proceeding following an appeal and remand) the Final Order and Judgment (provided that if the Settlement Court enters an order that does not conform in all material respects to the form of order attached as Exhibit B hereto, the Parties may, by the written agreement of all Parties, deem that order to be the Final Order and Judgment; and provided further that, if the Settlement Court modifies Subparagraphs 3(f)(i), (ii), or (iii) (in each case in a manner consistent with the Governing Agreements) that modification shall not be considered to be a material change to the form of order attached as Exhibit B hereto), and (vi) either the time for taking any appeal of the Final Order and Judgment has expired without such an appeal being filed or, if an appeal is taken, upon entry of an order affirming the Final Order and Judgment and when the applicable period for the appeal of such affirmance of the Final Order and Judgment has expired, or, if an appeal is taken from any decision affirming the Final Order and Judgment, upon entry of an order in such appeal finally affirming the Final Order and Judgment without right of further appeal or upon entry of any stipulation dismissing any such appeal with no right of further prosecution of the appeal (in all circumstances there being no possibility of such Final Order and Judgment being upset on appeal therefrom, or in any related appeal from an order of the Settlement Court in the Article 77 Proceeding, or in any other proceeding pending at the time when all other prerequisites for Final Court Approval are met that puts into issue the validity of the Settlement). All Parties will use their reasonable best efforts to obtain Final Court Approval.

(b) Effect of Failure to Obtain Final Court Approval. If at any time Final Court Approval of the Settlement shall become legally impossible (including by reason of the denial of Final Court Approval by a court with no possibility of further appeal or proceedings that could result in Final Court Approval), the Settlement Agreement shall be null and void and have no further effect as to the Parties except as set forth in this Subparagraph 2(b) and other provisions not specifically provided for herein as being subject to or conditioned upon Final Court Approval. In such event: (i) except as provided in Paragraph 7, the Parties hereto shall be deemed to have reverted to their respective status as to all claims, positions, defenses, and responses as of the date a day prior to the Signing Date, and (ii) the provisions of Paragraph 20 shall apply, along with such other provisions hereof not specifically provided for as being subject to or conditioned upon Final Court Approval. If Final Court Approval has not been obtained by

- 6 -

EXECUTION COPY

December 31, 2015, then Bank of America and Countrywide shall be permitted to withdraw from this Settlement Agreement and from the Settlement with like effect as if Final Court Approval had become legally impossible but only if the Trustee consents to such withdrawal in writing if in good faith it deems such withdrawal to be in the best interests of the Covered Trusts.

(c) Preliminary Order. As an initial step towards seeking Final Court Approval, as soon as is practicable after the Signing Date, the Trustee shall commence the Article 77 Proceeding and seek a preliminary order (the "Preliminary Order") to be entered by the Settlement Court providing for and/or requiring: (i) a form and method of notice of the Settlement and related matters to Investors (in a form and by a method agreed to after consultation with the other Parties), (ii) a deadline for the filing of written objections to the Settlement and responses thereto, (iii) a hearing date at which the Settlement Court would consider whether to enter the Final Order and Judgment, (iv) a direction that all actions subsequently filed that contain claims that would be within the release and waiver provided for in Paragraph 9 should be assigned or transferred to the justice of the Settlement Court before whom the Article 77 Proceeding is pending, and (v) ordering that the Trustee may seek direction from the Settlement Court before taking any action in respect of a Covered Trust that relates to the subject matter of the Article 77 Proceeding. At the same time as the Trustee seeks the Preliminary Order, it shall also file with the Settlement Court a petition stating its support for the Settlement Agreement.

(d) Cost of Notice. All costs related to the giving of notice of this Settlement and related matters as part of the Article 77 Proceeding shall be borne by Bank of America and/or Countrywide.

(e) Federal Tax Ruling. Final Court Approval shall be deemed not to have been obtained unless and until there has been received private letter ruling(s) applicable to all of the Covered Trusts from the Internal Revenue Service to the effect that: (i) the execution of, and the transactions contemplated by, this Settlement Agreement, including (A) allocation of the Settlement Payment to a Covered Trust and the methodology for determining such allocation, (B) the receipt of the Settlement Payment by a Covered Trust, (C) the distribution of the Settlement Payment by a Covered Trust to any of its Investors and the methodology for

- 7 -

151

determining such distributions, and (D) any monthly Master Servicing Fee Adjustment received by or otherwise credited to such Covered Trust will not cause any portion of a Covered Trust for which a REMIC election has been made in accordance with the applicable Governing Agreement to fail to qualify at any time as a REMIC, and (ii) the receipt of the Settlement Payment by the Covered Trusts and the receipt or other credit of any monthly Master Servicing Fee Adjustment by the Covered Trusts will not cause, or result in, the imposition of any taxes on the Covered Trusts or on any portion of a Covered Trust for which a REMIC election has been made in accordance with the terms of the applicable Governing Agreement. The Trustee shall cause a request for such letter ruling(s) to be submitted to the Internal Revenue Service within thirty (30) days of the Signing Date, or, if the Internal Revenue Service is not amenable to receipt of the Trustee's request for rulings within this thirty day period, as promptly as practicable thereafter, and shall use reasonable best efforts to pursue such request; such request may not be abandoned without the consent (which shall not unreasonably be withheld) of Bank of America, Countrywide, and the Institutional Investors. Bank of America and Countrywide shall use their reasonable best efforts to assist in the Trustee's preparation and pursuit of the request for the rulings. In the event that the provisions of Subparagraph 3(d)(i), (ii), or (iii) of this Settlement Agreement are modified by the Settlement Court, the Trustee shall update its request to the Internal Revenue Service to take account of such modifications, and the requirements of this Subparagraph 2(e) necessary for there to be Final Court Approval shall be deemed not to have been satisfied until there has been received private letter ruling(s) applicable to the Covered Trusts that takes account of such modifications and otherwise meets the requirements of (i) and (ii) of this Subparagraph 2(e).

(f) State Tax Rulings or Opinions. Final Court Approval shall be deemed not to have been obtained unless and until there has been received at the Trustee's request an opinion of Trustee tax counsel with respect to the States of New York and California, in each case, to the same legal effect as the requested rulings described in Subparagraph 2(e)(i) and (ii). The Trustee shall use reasonable best efforts to pursue such requests for opinions; any such requests may not be abandoned without the consent (which shall not unreasonably be withheld) of Bank of America, Countrywide, and the Institutional Investors. Bank of America and Countrywide shall use their reasonable best efforts to assist in the Trustee's preparation and pursuit of the foregoing requests. In the event that the provisions of Subparagraphs 3(d)(i), (ii), or (iii) of this Settlement

- 8 -

Agreement are modified by the Settlement Court, the Trustee shall update its requests for such opinions to take account of such modifications, and the requirements of this Subparagraph 2(f) necessary for there to be Final Court Approval shall be deemed not to have been satisfied until each of the opinions described in this Subparagraph 2(f) is received in a form that takes account of such modifications and otherwise meets the requirements of this Subparagraph 2(f).

(g) The Parties may collectively agree, each acting in its sole discretion, to deem the requirements of Subparagraphs 2(e) ("Federal Tax Ruling") or 2(f) ("State Tax Rulings or Opinions") to have been met by the receipt of tax rulings or opinions, as the case may be, that are substantially in accord with the requirements of such Subparagraphs 2(e) or 2(f).

3. Settlement Amount.

(a) Settlement Payment. If and only if Final Court Approval is obtained, Bank of America and/or Countrywide shall pay or cause to be paid eight billion five hundred million dollars ($8,500,000,000.00) (the "Settlement Payment") within one-hundred and twenty (120) days of the Approval Date, in accordance with the following provisions.

(b) Method of Payment. Each Covered Trust's Allocable Share of the Settlement Payment shall be wired to the Certificate Account or Collection Account for such Covered Trust by Bank of America as directed by the Trustee following determination of the Allocable Share of each Covered Trust pursuant to Subparagraph 3(c); provided, that if the Allocable Share of each Covered Trust has not been determined pursuant to Subparagraph 3(c) at the time at which the Settlement Payment is due pursuant to Subparagraph 3(a), the Settlement Payment shall be wired to a non-interest-bearing escrow account at BNY Mellon (the "Escrow Account") set up for the sole purpose of holding the Settlement Payment until the relevant Allocable Shares have been determined, at which time each Allocable Share of the Settlement Payment shall be wired from the Escrow Account to the Certificate Account or Collection Account for each applicable Covered Trust. The Parties undertake to use reasonable best efforts to enter into a reasonably satisfactory escrow agreement in the event that an Escrow Account is required, which shall include instructions regarding the payment of the Allocable Shares from the Escrow Account to the Covered Trusts by the Trustee. All of the Trustee's reasonable costs and expenses associated with performing its obligations under this Subparagraph 3(b) that exceed its ordinary costs and

- 9 -

152

expenses as Trustee shall be borne by Bank of America and/or Countrywide. If, after the Approval Date, all or any portion of the Settlement Payment is voided or rescinded for any reason, including as a preferential or fraudulent transfer (an "Avoided Payment"), that Avoided Payment shall be treated for purposes of this Paragraph 3 as though it were not made at all (provided that written notice has been given by the Trustee to Bank of America and Countrywide and Bank of America or Countrywide has not cured, made, or restored such payment within sixty (60) days). In the event of an Avoided Payment, the BNY Mellon Parties shall have no liability to any Person whatsoever for any Avoided Payment or any liability or losses relating thereto.

(c) **Allocation Formula.** The Settlement Payment shall be allocated by the Trustee amongst the Covered Trusts. The Trustee shall retain a qualified financial advisor (the "Expert") to make any determinations and perform any calculations that are required in connection with the allocation of the Settlement Payment among the Covered Trusts. For avoidance of doubt, for purposes of this Subparagraph 3(c), the term "Covered Trust" shall include any Excluded Covered Trusts. To the extent that the collateral in any Covered Trust is divided by the Governing Agreements into groups of loans ("Loan Groups") so that ordinarily only certain classes of Investors benefit from the proceeds of particular Loan Groups, those Loan Groups shall be deemed to be separate Covered Trusts for purposes of the allocation and distribution methodologies set forth below. The Trustee shall instruct the Expert to apply the following allocation formula:

(i) *First*, the Expert shall calculate the amount of net losses for each Covered Trust that have been or are estimated to be borne by that trust from its inception date to its expected date of termination as a percentage of the sum of the net losses that are estimated to be borne by all Covered Trusts from their inception dates to their expected dates of termination (such amount, the "Net Loss Percentage");

(ii) *Second*, the Expert shall calculate the "Allocable Share" of the Settlement Payment for each Covered Trust by multiplying (A) the amount of the Settlement Payment by (B) the Net Loss Percentage for such Covered Trust, expressed as a decimal; provided that the Expert shall be entitled to make adjustments to the Allocable Share of each Covered Trust to

- 10 -

ensure that the effects of rounding do not cause the sum of the Allocable Shares for all Covered Trusts to exceed the applicable Settlement Payment;

(iii) *Third*, if applicable, the Expert shall calculate the portion of the Allocable Share that relates to principal-only certificates or notes and the portion of the Allocable Share that relates to all other certificates or notes; and

(iv) The Expert shall calculate the Allocable Share within ninety (90) days of the Approval Date.

(d) **Distribution of the Allocable Shares; Increase of Balances.**

(i) After the Allocable Share for each Covered Trust has been deposited into the Certificate Account or Collection Account for each Covered Trust, the Trustee shall distribute it to Investors in accordance with the distribution provisions of the Governing Agreements (taking into account the Expert's determination under Subparagraph 3(c)(iii)) as though it was a Subsequent Recovery available for distribution on that distribution date (provided that, if the Governing Agreement for a particular Covered Trust does not include the term "Subsequent Recovery," the Allocable Share of such Covered Trust shall be distributed as though it was unscheduled principal available for distribution on that distribution date ); provided, however, that the Master Servicer shall not be entitled to receive any portion of the Allocable Share distributed to any Covered Trust, it being understood that the Master Servicer's other entitlements to payments, and to reimbursement or recovery, including of Advances and Servicing Advances, under the terms of the Governing Agreements shall not be effected by this Settlement Agreement except as expressly provided in this Subparagraph 3(d)(i) and in Subparagraph 5(c)(iv). To the extent that as a result of the distribution of the Allocable Share in a particular Covered Trust a principal payment would become payable to a class of REMIC residual interests, whether on the distribution of the Allocable Share or on any subsequent distribution date that is not the final distribution date under the Governing Agreement for such Covered Trust, such payment shall be maintained in the distribution account and the Trustee shall distribute it on the next distribution date according to the provisions of this Subparagraph 3(d)(i).

- 11 -

153